# CHARLESTOWN.

SHIELDS AND MAHAN *v.* HENRY W. REYNOLDS.

September 11, 1876.

1876.
August Term.

E. executes a negotiable note to S. and M. and they, for his accommodation, endorse the same, which note E. sells to R. for a loan of money. When the note falls due, S. and M. request R. to bring suit, which he does against all three. A judgment is rendered against all without appearance or defence. When, by agreement between E. and R., without the knowledge or assent of S. and M., the said R. directs his counsel to enter on the record at the foot of the judgment, "Execution stayed six months," which was done.—HELD:

1. This exonerates the said S. and M. from liability on said judgment. That a court of equity will enjoin the said R. from· enforcing said judgment against S. and M.

2. The relation which endorsers occupy to the holder and debtor, in negotiable paper, considered. See opinion of the Court.

An endorser is entitled to relief either at law or equity when the holder does a binding act, by which he suspends his right to proceed against the principal, without the assent of the endorser, because, in so doing, the holder impairs the remedy which the endorser would have over to save himself from loss.

When the endorser pays off the debt, he has a right to proceed at once to collect from prior parties to the note, what he has so paid, and to enforce all the equities of the holder, but if the holder has suspended his own right to proceed, the endorser, who stands in his shoes, cannot proceed, because of such suspension; the rights of the · endorser being thus impaired by the holder, it operates to exonerate the endorser.

Appeal from a decree of the circuit court of Kanawha· county, rendered at the May term thereof, 1874, in a

1876.
August Term.

Shields & Mahan
v.
Reynolds.

suit therein pending, in which Joseph Shields and Nelson Mahan were plaintiffs, and Henry W. Reynolds was defendant. Appeal granted on the petition of said Reynolds, the appellant.

The facts of the case are fully set forth in the opinion of the Court.

Hon. Joseph Smith, Judge of said circuit court presided at the trial below.

*W. A. Quarrier* for appellant.

*T. B. Swann* for appellees.

EDMISTON, JUDGE :

This is an appeal from a decree of the circuit court of Kanawha county, perpetuating an injunction to a judgment obtained by the appellant against the appellees, and one Davis H. Estill. The said Estill made his note to the appellees, for the sum of $250, on the eighteenth of September, 1872, negotiable and payable at "The First National Bank of Charleston," in sixty days after its date, which note he sold to Reynolds, the endorsers being merely accommodation endorsers. This note had been renewed once, or oftener. Afterwards, when it fell due, the endorsers requested Reynolds to bring suit, which he did, and at April court, 1873, a judgment was entered for the amount of the debt and costs. The record does not show that an appearance was made for any of the defendants, but at the foot of the judgment an entry, in these words, was made : " Execution stayed six months." After the six months elapsed, execution was sued out, and levied upon the property of the endorsers. They obtained the injunction, on the ground that they had requested the suit brought, so that the money might be made out of the property of Estill, and that the principal had agreed with Reynolds to make no defence to the suit if he would give him time, to which Reynolds agreed, and the entry aforesaid was made upon the record, without their knowledge, or consent. The evi-

dence in the case shows, that it was an agreement made between Reynolds and Estill, without the assent of either of the endorsers. The appellant claimed, in his answer, that the stay was given to all the parties; that it was a favor to the endorsers, and not to the maker, who was insolvent then, and so remained, and therefore the stay was a favor, and not an injury, to the endorsers. It also appears in the record, that Estill executed, on the twenty-sixth day of June, 1872, a deed of trust upon some personal property, to indemify these endorsers, as well as some other creditors and endorsers, which was also to operate for their benefit, if renewals were made.

When the cause was heard in the circuit court, the injunction was made perpetual with costs, &c.

Reynolds appealed to this Court, and claims that the decree of the circuit court is to his prejudice.

The first question to be considered in this case, is to ascertain the rule which governs courts of equity in giving relief. In *Norris v. Crummey*, 2 Randolph, on pages 333-4, Judge Green says: "The long settled rule of courts of equity, and which has been adopted, to its full extent, in the courts of law, in England, is, that if a creditor, by agreement, or any other act, precludes himself at law from proceeding against the principal, after the debt is due, for a moment; or if the agreement be such as would induce a court of equity to prohibit the creditors proceeding at law; the surety is discharged, because the creditor thereby inflicts an injury upon the surety, and deprives him of the means of relieving himself, either by paying the debt, and immediately proceeding against his principal, (for in that case he would be substituted to the rights of the creditor; and if the creditor has deprived himself, by any act, or agreement, of the right of proceeding immediately against the principal, this right of the surety would be impaired or frustrated), or by filing his bill *quia timet*, to compel the

debtor to pay the creditor, for the exoneration of the surety; in which case, if the creditor could not himself, in consequence of his own act, or agreement, compel the principal to pay, neither could the surety, who, in such case, asserts the rights of the creditor for his own safety."

"As a judgment, with a stay of execution, entered of record, prevents the plaintiff from proceeding at law immediately, and absolves the surety, and an agreement to give time, founded on valuable consideration, such as giving a new security, would be obligatory, and would be enforced in equity, such an agreement would also discharge the surety." And after reviewing several English cases, in which the surety has been, in some, discharged, and others not, he says, on page 338, "It is sufficient to know, that the sole ground of relief to sureties, in such cases, is settled, and avowed to be, that they have been deprived, by the act of the creditor, of a legal or equitable remedy for relieving themselves; or, that such remedy has been impaired by his act."

He deduces this rule for the relief of a surety from various English cases; one is the case of *Nisbet v. Smith*, 2 Bro. C. C. 579; which was to this effect. The surety called on the creditor to sue the principal, which he did, and took a confession of judgment, with a stay of execution for three years. This agreement was endorsed on the power of attorney to confess judgment. The original contract was merged in the judgment; so that, if the surety had paid the debt to the creditor, and he had ceded to the surety his rights, the latter could not have proceeded against the principal until after three years; and so, if he had filed his bill *quia timet*, the principals could not have been compelled to pay, until after three years. The remedies, therefore, of the surety were deeply impaired by this act of the creditor.

Another case was that of *Rees v. Berrington*, 2 Ves. Jr. 540, in which the creditor took new notes of the principal, giving further time for the payment than that stipulated by the bond. The chancellor said: "The

surety has a right, the day after the bond is due, to come here, and insist on its being put in suit. The obligee had suspended that, until the time contained in the notes run out. Therefore, he has disabled himself to do that equity to the surety which he has a right to demand."

· The rule laid down in 2 Randolph, by Judge Green, has been approved, and acted upon, in a great number of cases, since that time, and has always furnished the test by which, in such cases, relief was given, or refused. A reference to them is deemed unnecessary. It has become a matter of authority, that a departure from at this day, could not be allowed.

The next question arising, necessary to be ascertained is, do the plaintiffs below occupy the relation to the parties, debtor and creditor, and the debt, that entitles them to the relief sought and obtained in the circuit court? Or in other words, are they sureties within the meaning of that term, so as to be entitled to this relief? That an endorser of negotiable paper is not a "surety" in the strict and legal meaning of that term, I think, is clear from the authorities, and when we consider the nature and character of the undertaking of a surety; in the legal meaning of the term, as compared with that of an endorser, the difference is manifest. The contract of the former is absolute and unconditional. He generally, if not always, signs an instrument, which binds him absolutely with the principal, to pay so much money or other thing, or to do some other act. But the endorser's undertaking is conditional, and his liability also conditional and contingent. This liability is not fixed and absolute until due presentment, demand, and notice of the dishonor of the note. The endorser stands in the attitude of the drawer of a new bill, and is not primarily liable to make the payment, but only in case of the default of the maker, and proof of due presentment, protest and notice of dishonor. It is said that an endorser contracts with the endorsee and every subsequent holder

to whom the note is transferred; that the instrument and antecedent signatures are genuine; that he, the endorser, has a good title to the instrument; that he is competent to bind himself in such contract; that the maker is competent to bind himself to the payment and that he will, upon due presentment of the note, pay it at maturity; that if, when duly presented, it is not paid by the maker, he, the endorser, will, upon due and reasonable notice being given him of the dishonor, pay the same to the endorsee or other holder. *Ross v. Jones,* 22 Wallace, 589 and authorities there cited.

It is therefore manifest that an endorser does not occupy the relation of a strict surety.

But it is equally clear that when he is made liable for the debt according to the character of his contract, he is in one sense, a principal in the debt, and in another, a surety for the debt. As to the holder of the note, he is responsible as the drawer of a new bill. He is a surety for the debt as to the maker, because he has the right, upon the payment of the debt, to look to the maker for indemnity, or he has a right to be substituted to the rights of the holder of the debt, in case a judgment has been obtained against the maker, by the holder, and paid by him. And this would be especially so in this State, where a joint judgment can be had against the maker and endorser. When he seeks such substitution, he would have to show that the debt was that of the maker, and that it is the duty of the maker to pay the same and save him harmless. He would have to show that in equity and conscience, such was the case, because the doctrine of substitution is always administered upon principles of equity. Whether we look at his relation to the transaction, in the one or other light, still it is his right that the holder shall do no act, to suspend, impair, or destroy his remedy over, against the prior parties to whom he has a right to resort for a remedy, and especially would it be so as to the maker. If the holder

would so interfere, before judgment had, it would be a discharge of the endorser, and he could avail himself of such defence at law. If he does not do so before judgment, but either obtains several joint judgments against the maker and endorsers, and does an act, by entering stay of execution as to the maker, or makes a new contract for valuable consideration, giving new time to the maker, binding his hands as to the maker, and bringing himself within the rule which entitles a surety or endorser to relief; if a court of equity cannot give that relief, he is remediless, because his day in law is over and gone, and the matter of his defence did not arise until the judgment was had against him.

1876.<br>August Term.<br>———<br>Shields & Mahan<br>v.<br>Reynolds.

The acts of Assembly of W. Va., chapter 101, section 1, and 2, Code of W. Va., pages 541–2, provides that "The surety or guarantor, or endorser, (or the personal representative) of any person bound by any contract, may, if a right of action has accrued thereon, require the creditor, or his personal representative, by notice in writing, forthwith to institute suit theron, and if such creditor, or his representative, shall not, in a reasonble time after such requisition, institute suit against every party to such contract, who is a resident of this State, and not insolvent, and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety, and all co-sureties, the money due by such contract." This notice is said to be a substitute for the bill "*quia timet,*" and as the notice is given to an endorser, it is presumable that he was considered entitled to the original remedy. If he was not, before, he certainly ought to be by reason of this statute, conferring on him the right to relief by notice, if the creditor fails to use diligence. The relief sought by endorsers by notice, has in some cases been denied, because they were not embraced within the statute, it being confined to "sureties." This cannot apply in this State, because the statute embraces "sureties, guarantors and endorsers."

I have found no case reported that does not recognize

62

the doctrine, or rule that if the holder does any act impairing the endorsers right to resort to the maker for indemnity for what he, as endorser, has become liable to pay, he can show such act in exoneration of himself from his engagement to the creditor.

There is a large number of cases in which it is held that the endorser is not, as a surety, entitled to call upon the holder to use diligence in the collection of the debt. That his best remedy is to comply with his contract, pay the note and proceed to protect his own interest.

In these cases it will be found that there is no statute giving the endorser the right, as a surety, to call on the holder to proceed by suit, as is in this State.

In this case, before this Court, there can be no real dispute about the facts. Estill was the maker of the note, Shields and Mahan endorsed the note as matter of accommodation to him. The endorsers desired suit brought to protect their rights, as Estill was in doubtful circumstances, and they thought if a judgment could be obtained and an execution issued, the debt might be saved by a resort to the property of Estill. A joint action was brought, the endorsers did not make defence, and a judgment by default was entered. But the maker employed counsel to defend the action, and upon an agreement made between the holder and maker, unknown to the endorsers, the holder agreed to give six months stay of execution, and it was so entered upon the record. He thus tied his hands, and did deprive by this, his act, the endorsers of their remedy for relieving themselves, their remedy being suspended for the period of six months. If they had paid off this debt, and asked to be substituted to the rights of the creditor, he could not have granted to them any greater right than he had, and his right was suspended, by this agreement of record for the period of six months.

I am of opinion that the decree of the circuit court is

right, and is sustained by a long course of decisions of great uniformity.

The decree is affirmed with costs to the appellees, and $30 damages.

The other Judges concurred.

DECREE AFFIRMED.