## ZURICH GENERAL ACCIDENT & LIABILITY INS. CO., Limited, v. TAYLOR et al.

### Civil Action No. 118.

District Court, S. D. West Virginia, at Charleston.

March 27, 1941.

Sam Silverstein and Wayne A. Rich, both of Charleston, W. Va. (Silverstein, Davis & Rich, of Charleston, W. Va., on the brief), for plaintiff.

T. C. Townsend, and Hillis Townsend, both of Charleston, W. Va. (T. C. Townsend, Hillis Townsend, both of Charleston, W. Va., and W. J. Thompson, of St. Albans, W. Va., on the brief), for defendants.

McCLINTIC; District Judge.

### Findings of Fact.

The automobile driver's license of the defendant, Henry C. Taylor, was revoked by the State Road Commission of West Virginia in 1937 because of conviction for drunken driving. Under the provisions of the West Virginia Financial Responsibility Law, as they then and now provide (usually referred to as the Financial Responsibility Law, and being Chapter 17, Article 20, Section 5 of the 1937 Code of West Virginia, Acts 1935, c. 61, § 5), as a prerequisite to obtaining reinstatement of his driver's permit, it was necessary that the defendant, Henry C. Taylor, furnish to the State Road Commission proof of ability to respond in damages by procuring and filing with the Commission a certificate of any insurance carrier, duly authorized to do business within this state, that it has issued to, or for the benefit of, the person furnishing such proof and named as the insured, a motor vehicle liability policy or policies, designating that at the date of the filed certificate the policy

or policics is or are in full force and effect, and certificate shall further designate, by explicit description, all motor vehicles to which the policy or policies apply; and an additional certificate shall be required as a condition precedent showing that there has been issued to the insured a policy of insurance insuring him with respect to any motor vehicle operated by him, such type of policy, for which the latter certificate is issued, being known as an operator's policy.

On the 4th day of October, 1937, the defendant, Henry C. Taylor, applied to the plaintiff through Commercial Insurance Service, Inc., its local agency, for a policy of liability insurance to be written pursuant to the provisions of the West Virginia Financial Responsibility Law, and in accordance with such application a policy was issued and certificates of insurance were delivered to Henry C. Taylor, who in turn delivered the certificates to the State Road Commissioner. The policy of the plaintiff issued to Henry C. Taylor was known as its liability and property damage insurance policy, covering liability for personal injury and property damage resulting from operation of assured's automobile and the operation of any other automobile by the assured, in liability limits of five thousand dollars for any one injury, and ten thousand dollars for any one accident, and property damage limit of five thousand dollars. This policy, as indicated by the certificate, became effective on October 4, 1937, and was written for a term of one year, with an expiration date of October 4, 1938. On October 3, 1938, the aforesaid policy was renewed by the issuance of a new policy. The premiums were promptly paid on the above policies. The policies issued October 3, 1938, together with the certificates of insurance, were delivered to Taylor and the certificates were thereafter delivered to and received by the State Road Commissioner on the same day. The policies were not introduced in evidence, but from the certificates of insurance information was given as to the contents and provisions of said policy to the effect that the latter policy was effective on October 4, 1938, and was written for a term of one year, with an expiration date of October 4, 1939, covering damage resulting from bodily injury to any one person in the amount of five thousand dollars, and ten thousand dollars for any one accident, and property damage in the amount of five thousand dollars.

Taylor failed to file a new certificate of insurance or a renewal of said policy, and the Commissioner entered an order on the 4th day of October, 1939, revoking the driver's license and registration of the said defendant Taylor, and an order was thereupon placed in the hands of the State Police to apprehend Taylor and take up his driver's permit and his registration plates.

Prior to the presentation of evidence in this cause, a stipulation was entered into between the parties hereto, it being agreed that the plaintiff company is duly authorized to do business in the State of West Virginia; that it is a member, and was a member in April, 1935, of the National Bureau of Casualty Insurance Underwriters, and was represented by the National Bureau of Casualty Insurance Underwriters in its negotiations had with the State Road Commission, that both of the above mentioned policies were issued to Henry C. Taylor covering liability and property damage, as above set out, both as to ownership and nonownership, and that certificates of insurance evidencing such renewal policy were delivered to and received by the State Road Commission on October 8, 1938; that an accident occurred on the 20th day of October, 1939, as a result of which claims accrued against Henry C. Taylor and subsequently resulted in damages being recovered against Henry C. Taylor and Early Taylor, whose car the defendant was driving at the time of the accident, aggregating thirty-four thousand dollars.

Counsel representing the various judgment creditors of Henry C. Taylor and Early Taylor made claims upon the plaintiff under said policy of insurance of October 4, 1938, and threatened to institute legal proceedings against said plaintiff to collect on said policy.

The pertinent question and the whole issue of whether the aforesaid renewal policy issued October 3, 1938, was in effect at the time of the accident, October 20, 1939, revolves around that part of Subdivision (a) Section 5, Article 20, Chapter 17, Code of West Virginia, 1937, which prescribes the method of giving notice as follows: "The commissioner shall be notified by the insurance carrier of the cancellation or expiration of any motor vehicle liability policy certified under the provisions of this article at least ten days before the effective date of such cancellation or expiration, and until such notice is duly given, such policy shall continue in full force and effect. The notice of such cancellation or expiration shall be served in the manner provided in sec-

tion one, article two, chapter fifty-six (§ 5519) of the Code of West Virginia, one thousand nine hundred thirty-one, or by registered mail, which latter method shall be evidenced by a return receipt."

Section 1, Article 2 of Chapter 56 of the Code of West Virginia 1931, above referred to, is as follows: "A notice, no particular mode of serving which is prescribed, may be served by delivering a copy thereof in writing to the party in person; * * *."

The evidence disclosed that the certificates of insurance were delivered to Taylor at the time of the issuance of the policy. Delivery of these certificates in some manner was made to the Commissioner's office in person, as the Commissioner, by his duly authorized agent, said the certificates were delivered to and received by him. The official stamped receipt of the State Road Commission disclosed the following on the back of both the Owner's Policy Certificate and the Operator's Policy Certificate: "State Road Commission—Filed Oct. 3, 1938, Transportation Department, Charleston, West Virginia".

The West Virginia Financial Responsibility Law was enacted by the West Virginia Legislature on March 5, 1935, and became effective on that date. The different Superintendents of Transportation of the State Road Commission of West Virginia in charge of the enforcement of the Financial Responsibility Law appeared as witnesses and testified as to the administration of the law. James P. Tierney, who served as Supervisor of Transportation from a time prior to the enactment of this law until October, 1939, testified that the duty of setting up the organization and administration of the law was delegated to him. This law being a uniform law, Mr. Tierney conferred with the representatives of the National Board of Casualty and Surety Underwriters, which Board, the representative of many insurance companies, had helped in the drafting of the proper forms and regulations used in those states having this similar uniform law, The Financial Responsibility Law. After reviewing the forms in some other states, an agreement was concluded with the National Board of Surety and Casualty Underwriters, which organization represented the plaintiff herein, providing for certain forms of certificates of insurance furnished in quadruplicate to contain full information and certification of the issuance of Financial Responsibility Insurance policy and to be furnished to the Commissioner in triplicate, one copy thereof to be filed by the Commissioner alphabetically, one copy to be filed chronologically and the remaining copy to be forwarded by the Commissioner to the insurance company as an acknowledgment of the receipt and filing of the certificates of insurance. This certificate of insurance on its face plainly states the effective and expiration dates of the policy. The following paragraph is copied from the certificate: " * * * A Motor Vehicle Liability Policy, as defined in Chapter 61, Laws of 1935, State of West Virginia, which policy is in full force and effect on the date hereof and may not be cancelled or expire except upon ten days prior written notice to the State Road Commissioner at Charleston, West Virginia. * * *"

The understanding and agreement between the Commission and the insurance company, through its representative, was that the delivery to the Commissioner of the certificates of insurance would constitute full compliance with the Responsibility Law, and would obviate the necessity of the insurance company giving any further notice of the expiration of such policy.

The statements of the witnesses successively in charge of enforcement of the Financial Responsibility Law are to the effect that the additional certificate of insurance filed with the Commissioner for chronological filing in his office was to be treated as the notice required by the statute of expiration of the policy, and that such certificate, when received by the Commissioner and filed chronologically, gave the Commissioner full and complete notice of the expiration date of the insurance policy, and that in all cases, including the instant case, the Commissioner had actual knowledge of the expiration date of the policy at least ten days before its expiration date, and not only had such notice, but acted upon it by giving notice to Henry C. Taylor, the assured, although such notice on the part of the Commissioner is not required by the statute.

In light of the above testimony as to the administrative setup by the State Road Commissioner for the enforcement of this law, it should be observed that Section 17 of the Financial Responsibility Act of West Virginia provides as follows: "The commissioner shall administer and enforce the provisions of this article and he is hereby authorized to adopt and enforce such rules and regulations as may be necessary for

the administration of the provisions of this article."

Conclusions of Law.

 In construing the Financial Responsibility Law of West Virginia and with particular regard being given to Section 5(a) which pertains to the manner in which the Commissioner shall be notified by the insurance carrier of the cancellation or expiration of any motor vehicle liability policy certified under the provisions of the act, it is important to see if the Commissioner, by his arrangement with the National Board of Surety and Casualty Underwriters as to the chronological filing of any of the certificates constituting full compliance with the Financial Responsibility Law in regard to the necessity of the insurance company giving notice of the expiration of such policy, has simply adopted and enforced such rules and regulations as may be necessary for the administration of the provisions of the Financial Responsibility Law, or if he has invaded the legislative function of the legislature. The contentions of the defendants as to the rules and regulations of the Commissioner invading the legislative field do not prevail, nor does the case of Zurich General Accident & Liability Ins. Co., Ltd. v. Industrial Commission et al., 325 Ill. 452, 156 N.E. 307, support that contention as has been urged by the defendants. It is true that the Illinois Statute in the above-cited case contained no provision for a ten-day notice of cancellation and that the Commissioner, by Rule 28 of the Industrial Commission, attempted to insert a ten-day notice of termination clause in the policies. The statute under which the Commission operated provided: "The board may make rules and orders for carrying out the duties imposed upon it by law, which rules and orders shall be deemed prima facie reasonable and valid." Smith-Hurd Stats.Ill. c. 48, § 153, Cahill's Stat.1925, c. 48, par. 216, page 1186.

The Supreme Court of Illinois, in holding for the insurance company, said: "Rule 28 of the Industrial Commission, requiring ten days' notice of the termination of liability upon an insurance policy, exceeds the authority conferred upon the commission, as it extends liability on a policy, which may have ceased to exist, until ten days after notice of the termination of the liability."

However, the State Road Commissioner of West Virginia is not acting under a similar statute, since the Financial Responsibility Law of the State of West Virginia provides that the Commissioner shall be notified by the insurance carrier of the cancellation or expiration of any motor vehicle liability policy certified under the provisions of this article at least ten days before the effective date of such cancellation or expiration, and until such notice is duly given, such policy shall continue in full force and effect, and said law further provides that such notice shall be served in the manner provided in Section one, Article two, Chapter fifty-six of the Code of West Virginia, one thousand nine hundred thirty-one, or by registered mail, which latter method shall be evidenced by a return receipt.

The case cited by the defendants is not analogous, nor does it follow from the above cited case, as the defendants contend, that the State Road Commissioner of West Virginia has invaded the legislative field by attempting to reduce the liability period of the policy.

Further inspection of other cases cited by the defendants, particularly American Employers Insurance Co. v. Huffman et al., 1933, 97 Ind.App. 548, 187 N.E. 410, and Dougherty v. General Accident Fire & Life Assurance, 1930, 259 Ill.App. 268, strengthens the opinion of this Court that the Commissioner has not usurped the legislative function because in those two cases there was a failure on the part of the insurance carriers even to attempt to file notices of termination of policies, more than ten days before the accident occurred, with the respective boards as the statute required. It was in light of these difficulties, encountered around 1930, with statutes requiring proof of insurance of liability to pay compensation to be filed with Industrial Commissions or Boards, that led to the agreement between the Underwriters Bureau and the Commissioner as to the procedural matter relating to the notice required by the statute. Section 5(a) of the West Virginia Financial Responsibility Law is not to be narrowly construed as to the manner of notice to be given, as by the very wording of that pertinent part of Section 5 it is provided that such notice may be served in the manner provided in section one, article two, chapter fifty-six of the Code of West Virginia, 1931, or by registered mail evidenced by a return receipt. The defendants, in their argument and contentions, seem to ignore the effect the above sentence of section 5 has in the present case, and it is by virtue of the liberal interpretation in the cases decided, in construing section

one, article two, chapter fifty-six of the Code of West Virginia, 1931, that the Court arrives at its conclusion that the State Road Commissioner of West Virginia had a right to reach such an agreement with the Underwriters Bureau under section 17 of the Financial Responsibility Law of West Virginia, which statute has been quoted hereinabove in its entirety.

In Kenney v. Indemnity Insurance Co. of North America, Sup.Ct. 1932, 159 A. 686, 10 N.J.Misc. 346, the insured took a financial responsibility policy with an insurance company, and filed it with the Motor Vehicle Commission. Later, on January 16, 1931, the insured's conviction of drunken driving was reversed and on March 31, 1931, the insurance company gave written notice to the insured of intention to cancel the policy for non-payment of premiums, and the insured returned the policy to the insurance company and cancelled it on April 2, 1931, by virtue of his surrender of the policy with that intention. The Motor Vehicle Commission was notified on April 7, 1931, of the termination. The wreck occurred on April 12, 1931. The Supreme Court of New Jersey held that cancellation could take place only in the manner provided by statute, and that the cancellation, therefore, was not effective until April 16, ten days after notice was received by the Commission.

In the above cited case the question of notice, under the financial responsibility policy, is concerned with the cancellation of a policy for non-payment of premiums, and not with the expiration of the policy, as in the present case. The evidence was given by the successive Supervisors of Transportation in the instant case (particularly the testimony of James P. Tierney), that a written notice of expiration was filed at the same time that the chronological form of certificate was filed in the office of the State Road Commissioner, and that in the event of cancellation of a policy, the period of notice required in that provision of the statute was necessary in connection with the cancellation. The defendants assail the methods of administrative procedure and reiterate that the statute provides that ten days' notice shall be given of expiration and cancellation. From the facts of the Kenney case, it is in keeping with the evidence of Mr. Tierney to say that the policy could not have been cancelled in any other way than as permitted by the Financial Responsibility Act.

The certificates of insurance were delivered to the duly constituted agent of the Commissioner, in person, and such delivery constituted a personal service under the statute, since under Section 1, article 2 of chapter 56 of the Code of 1931 of West Virginia: "A notice, no particular mode of serving which is prescribed, may be served by delivering a copy thereof in writing to the party in person."

In Corpus Juris, Vol. 50, page 486, the following is stated in regard to the acceptance or acknowledgment of service: "An acknowledgment or acceptance of service within the jurisdiction is the full equivalent of actual personal service, renders such service unnecessary, and in some jurisdictions is expressly provided for by statute."

In the case of George v. City of Wellsburg, 111 W.Va. 679, 163 S.E. 431, the statute under consideration required thirty days' written notice to property owners before certain street improvements could be made, and further required that notice should be served in the manner provided in sections 1 and 2, article 2, chapter 56, Code; where the evidence showed that while the required notice was not actually served on several abutting property owners, it was held that by virtue of their having actual notice of the proposed improvements, the statute was substantially complied with.

In the case of McDonald v. Stewart, 110 W.Va. 280, 158 S.E. 177, 178, the evidence showed that a letter was written by an endorser of a note to the holder thereof, and the court, in holding that the letter constituted notice of requirement to sue and that said service of such notice comes within the provisions of Section 1, Article 2, Chapter 56, Code of 1931, said: "The object of formal service of a notice upon a party is to insure his receipt of the same, and obviously where such party admits the receipt of a communication purporting to contain a notice, the means of delivery of the same to him becomes of secondary importance."

Since West Virginia's personal service statute makes no requirement as to the method or manner by which the notice shall be served or delivered to the party for whom it is intended, full compliance with the personal service provision was observed.

In Bailey Lumber Company v. General Construction Company, 101 W.Va. 567, 133 S.E. 135, the question involved was concerning a materialman's lien with the statute permitting an owner, at any time, by no-

tice served in the manner provided for under the personal service section of the West Virginia Code, to require a materialman to furnish an itemized account of the materials alleged to have been furnished. Held in syllabus 1: "Where a statute directs that a notice in writing shall be given, but prescribes no method of service, it is ordinarily sufficient to show that the party to be noticed actually received the written notice. The means or method by which he actually received it are unimportant."

An important case in regard to the question of proper notice is the case of Fleisher Engineering & Construction Company et al. v. United States of America, etc., 311 U.S. 15, 61 S.Ct. 81, 83, 85 L.Ed. ——, decided by the Supreme Court of the United States by a unanimous court on November 12th, 1940. The facts were as follows: The United States instituted a suit on behalf of George S. Hallenbeck to recover upon a bond given by Fleisher Engineering & Construction Company and Joseph A. Bass, with their sureties, and providing for the payment for labor and material furnished under a contract between the principals on the bond and the United States for the construction of a certain housing project. Part of the labor required by the contract was performed by Hallenbeck for a sub-contractor with the approval of the contractors. The question involved is whether the giving of the required written notice to the sub-contractor was sufficient, as it was not sent by "registered mail". The suit was brought under the Miller Act of August 24, 1935, 40 U.S.C.A. § 270b, which act provided: "Such notice shall be served by mailing the same by registered mail, postage prepaid * * *, or in any manner in which the United States Marshal of the district in which the public improvement is situated is authorized by law to serve summons." It was admitted that the notice was in writing and was sent by mail and the actual receipt of the notice and the sufficiency of its statements were not challenged. The Miller Act created a new right of action and compliance with the prescribed limitation was essential to the assertion of the right conferred.

The Court said:

"In short, a requirement which is clearly made a condition precedent to the right to sue must be given effect, but in determining whether a provision is of that character the statute must be liberally construed so as to accomplish its purpose. * * *

"In giving the statute a reasonable construction in order to effect its remedial purpose, we think that a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue and the provision as to the manner of serving notice. The structure of the statute indicates the distinction. The proviso, which defines the condition precedent to suit, states that the material-man or laborer 'shall have a right of action upon the said payment bond upon giving written notice to said contractor' within ninety days from the date of final performance. The condition as thus expressed was fully met. Then the statute goes on to provide for the mode of service of the notice. 'Such notice shall be served by mailing the same by registered mail, postage prepaid', or 'in any manner' in which the United States marshal 'is authorized by law to serve summons'. We think that the purpose of this provision as to manner of service was to assure receipt of the notice, not to make the described method mandatory so as to deny right of suit when the required written notice within the specified time had actually been given and received. In the face of such receipt, the reason for a particular mode of service fails. It is not reasonable to suppose that Congress intended to insist upon an idle form. Rather, we think that Congress intended to provide a method which would afford sufficient proof of service when receipt of the required written notice was not shown."

In the foregoing case the decision in United States for Use and Benefit of John A. Denie's Sons Co. v. Bass, 6 Cir., 111 F.2d 965, is overruled and in a case which is on all fours with the principal case the highest court of our land has seen fit, as a matter of justice and equity, to construe the statute liberally and to require only substantial compliance of manner provided for service of notice.

It is certainly evident that even though plaintiff might have, with all solemnity, prepared a formal notice and caused the same to be duly served upon the State Road Commissioner by an officer authorized to serve notices, and even though a proper return showing service had been made upon such notice, the Commissioner would have had no more actual notice and could have done nothing further for the protection of the public or to carry out the purposes of the Financial Responsibility Act than was actually done by the Commissioner under the notice afforded him by the duplicate

certificates of insurance delivered to him and filed by him in accordance with an agreement and understanding with plaintiff, through its representative.

The opinions of the West Virginia Court and the United States Supreme Court are conclusive on the question of sufficiency of the notice given in this case.

Not only are the foregoing quoted opinions to be followed in this case and given their due consideration, but the question of the sufficiency of the notice given cannot be entirely separated from all reasonableness and equity with reference to the plaintiff in the instant case and all other financial responsibility policies filed, many of which are now assumed to have long been expired. From the contentions of the defendants, which contentions are not valid in light of the weight of authority, that the notice in the instant case was not a sufficient notice within the requirements of the statute, it would follow that every financial responsibility policy heretofore issued is still alive and will continue to be alive until a more formal notice is served upon the Commissioner.

The policy of the defendant involved in this case expired and became ineffective for any purpose after October 4, 1939, and the defendant judgment creditors of the defendant, Henry C. Taylor, are not entitled to recover under said policy.