# CHARLESTON.

J. J. Ross *et al.* v. Lake & Export Coal Corporation.

Submitted October 25, 1922. · Decided October 31, 1922.

1.  Instructions—*Statement of Law Applicable in Abstract Terms Not Necessarily Grounds for Reversal.*

    An instruction stating in abstract terms, law applicable to facts in the case in which it is given, as the jury may find them from the evidence, but making no express reference to the evidence or the case in any way, is defective in respect of form, but the error in the giving thereof does not necessarily constitute ground for ward of a new trial.  (p. 231).

2.  Same—*Defective and Inaccurate Instructions Conceding to Party Against Whom Drawn All He is Entitled to Erroneous but Not Prejudicial.*

    The giving of formally defective and verbally inaccurate instructions, respecting the measure of damages, in an action founded upon breach of a contract, so drawn as clearly to concede to the party against whom they are given, when read and considered together in the light of the evidence in the case, all he is entitled to, or more, though erroneous, is not prejudicial in any substantial sense of the term, and therefore, does not justify award of a new trial.  (p. 234).

3.  New Trial—*Order of Trial Court Setting Aside Verdict on Ground of Excessive Damages and Founded Upon Infirmity of Evidence Impressions Derived by Him and Observations of Witnesses Will Not be Disturbed.*

    If, in such an action, uncertainty and indefiniteness are found in the evidence respecting the amount of the damages suffered by the plaintiff, of such degree or gravity as to call forth the deliberate and serious judgment of the trial court, as to whether a substantial part of a large amount assessed as damages by the jury and awarded by their verdict is sustained by the evidence, a judgment or order setting aside the verdict, on the ground of excessiveness, and founded upon such infirmity in the evidence and impressions presumptively derived by the trial judge, from his observation of the witnesses and parties, their appearances, conduct and demeanor, in the course of the trial, will not be disturbed by the appellate court.  (p. 234).

4.  Same—*Discretion of Trial Court.*

    In addition to erroneous rulings in a trial, or weakness of

evidence, relied upon in a motion for a new trial, there is discretion in the trial judge, founded upon impressions derived from his observations in the course of the trial which he may exercise in resolving any doubt he may have, as to the proper disposition of the motion, wherefore his award of a new trial, based upon his opinion as to the sufficiency of the ground of the motion therefor, is entitled to peculiar respect in the appellate court. (p. 234).

Error to Circuit Court, Cabell County.

Action in assumpsit by J. J. Ross and others against Lake & Export Coal Corporation for recovery of damages for breach of contract. Verdict for defendant, and plaintiffs bring error.

*Affirmed.*

*Walter K. Sibbald, W. R. Lilly* and *Fitzpatrick, Brown & Davis,* for plaintiffs in error.

*John H. Meek, Marcum & Marcum* and *Holt, Duncan & Holt,* for defendant in error.

POFFENBARGER, PRESIDENT:

The order complained of on this writ of error, set aside a verdict for $61,685.99, found in an action of assumpsit, in which recovery of damages is sought, for breach of a contract by which the defendant agreed to take and pay for all of the coal produced by the plaintiffs, from their mine, within the period of one year, commencing October 8, 1920, at the price of $8.00 per ton.

In the brief filed to sustain the ruling complained of, there is no denial of the sufficiency of the evidence to prove the contract alleged and the breach thereof, as found by the jury; wherefore there is no occasion to set forth the evidence introduced for proof of the contract and breach thereof. From October 8, 1920, until December 9, 1920, the defendant performed its contract, taking an average of nearly 86 tons of coal, for each working day, and paying the purchase money of all of the coal so taken, except a balance of $1,685.99, for

which the plaintiffs sue, in addition to the damages for the breach of the contract.

The coal produced and shipped within the period during which the contract was observed and kept by the defendant amounted to 5,719.3 tons. If the defendant had not broken its contract, on December 9, 1920, and had observed it until the end of the contract year, October 8, 1921, and the rate of production had been maintained, the quantity produced and taken between said dates, would have been 22,117 tons. Throughout the period of the breach, the average market price of coal was below the cost of production at the mine operated by the plaintiffs, but there may have been some instances in which it equaled or exceeded such cost. From the evidence adduced, the jury were justified in finding that the cost of production was $3.625 per ton.

Infirmity in the verdict, justifying the action of the court in setting it aside, is predicated in argument, upon alleged errors in the giving of two instructions, at the instance of the plaintiffs, Nos. 3 and 4, and the refusal to give one instruction upon the request of the defendant, namely, defendant's instruction No. 3. Alleged excessiveness of the damages is also invoked by way of justification of the action of the court. These are the only grounds suggested in the argument, for such purpose.

Instructions No. 3 and 4, given for the plaintiffs are challenged principally upon the ground of error and inaccuracy in their prescription of the measure of damages. In respect to No. 3, there is further complaint upon the ground of abstractness. An instruction propounding applicable law, but abstract in form, not referring in any way to the evidence or the facts to be found, as a basis for its application, is defective in point of form, and may properly be refused by the court, for that reason. *Parker* v. *National Building etc. Association,* 55 W. Va. 134; *State* v. *Prater,* 52 W. Va. 132; *State* v. *Shepherd,* 49 W. Va. 582. It does not necessarily follow, however, that a verdict may properly be set aside for such a formal defect. *Picket* v. *Morris,* 2 Wash. (Va.) 255; *Medley* v. *Medley,* 3 Munf. 191. Said instruction No. 3 is plainly

defective in substance as well as in form. It applies the measure of damages adopted and enforced in cases of breaches of working contracts, such as were involved in *Smith* v. *Pocahontas Coal Co.*, 66 W. Va. 599 and *Barrett* v. *Raleigh Coal & Coke Co.*, 55 W. Va. 395. As this is manifestly not a working contract, but one of sale, in which the elements of damages for breach thereof differ materially from those involved in the estimate of the damages for breach of a working contract, the rule prescribed by the instruction is not strictly applicable to the case. It says the plaintiffs are entitled to recover, in an action of this kind, the full contract price, less the expense of fulfilling the contract. Under the circumstances disclosed in this record, the adoption of that rule though it is not strictly applicable, may not have been prejudicial. Here, since the cost of production of the coal was the expense of fulfilling the contract and exceeded the market price, the instruction may have conceded to the defendant all it was entitled to, or more, under the principles enunciated and applied in *Fayette-Kanawha Coal Co.* v. *Lake and Export Coal Corporation*, 91 W. Va. 132, 112 S. E. 422. Moreover, the very general terms used in instruction No. 3, which was not binding in form, may have been sufficiently limited by further terms of prescription, found in plaintiff's instruction No. 4. Under a doctrine adopted and enforced in many decisions of this court, the two instructions are to be read together, and, if, being so read, they correctly state the law, they are not condemned for mere verbal inaccuracies which could not have mislead the jury. Instruction No. 4 authorized the jury to find for the plaintiffs the difference between the contract price and the cost of production, as to the coal which was not mined within the contract period, but would have been mined if the defendant had complied with its contract; and, as the coal mined by the plaintiffs and sold to persons other than the defendant, within the period of the contract, by reason of its failure to take it, to find for the plaintiffs the difference between the contract price and the market price, if the cost of production was below the market price, provided the coal was sold at or below the market

price, and the difference between the contract price and the price at which it was sold, if sold for a price in excess of the market price. The attack upon this instruction is limited to the part thereof, which deals with the unmined coal. It is suggested that the cost of production, under some circumstances may exceed the contract price, and it did so in this case, as to small quantities of coal produced, by reason of necessary mining into what is called a pinch or roll. The suggestion that the instruction may accord right to recover the cost of production over and above the contract price, is not well taken however, because, when this instruction is read in connection with instruction No. 3, giving right to recover the contract price less the expense of production, the suggestion is found to be groundless. Nor is the other suggestion that the market price might have been in excess of the cost of production, well founded. The proof is that the average market price of coal was far below the cost of production, throughout the period of the contract. Read together and considered in the light of the evidence, the damages they authorized the jury to assess, in respect of unmined coal, are not in excess of what the law allows. *Fayette-Kanawha Coal Co.* v. *Lake and Export Coal Cor.*, cited. The rule generally applicable in cases of this kind, as defined in that case, is subject to a limitation based upon a circumstance not found here, namely, the closing of the mine of the plaintiff, by reason of the default of the defendant. The plaintiffs in this case operated their mine, until the end of the contract period, October 8, 1921. Our conclusion is that these two instructions though somewhat inaccurate, were not so drawn as to work prejudice to the defendant, in the assessment of the damages. This case was tried, and the instructions given, before the law relating to the measure of damages, applicable in cases of breaches of contracts of this kind, was defined by this court. If the judgment complained of shall be permitted to stand and a new trial shall take place, the trial court will no doubt give instructions in conformity with the law as it has been settled, if requested so to do. Hence, further discussion of these instructions is unnecessary.

Instruction No. 3 requested by the defendant, if given, would have directed the jury to return a verdict for the defendant, if they should find that the contract was made between it and the J. J. Ross Sales Agency and not with the plaintiffs doing business as the Lincoln Smokeless Coal Co. The only evidence in the case, relied upon as constituting a sufficient basis for the giving of this instruction, is the statement of J. J. Ross, one of the plaintiffs, holding a relatively large interest in the firm, made to the president of the defendant company, in the course of the negotiation of the verbal contract, or at the conclusion thereof, to the effect that, if the defendant so desired, the J. J. Ross Sales Agency, or the Ross Coal Sales Agency, might be made the seller in the formal, written contract contemplated by the parties, but never prepared nor executed. The name suggested was nothing more than a trade designation under which Ross conducted business in his individual capacity. It appears from his testimony, that he did not own the coal constituting the subject matter of the contract, in his individual capacity, and that he had no contract with the owners thereof for the purchase of the same. The evidence clearly identifies the subject matter of the contract, as being the property of these plaintiffs, and puts it beyond doubt, as matter of law, that if the contract had been made in the trade name suggested, it would have been made for the sole benefit of the plaintiffs, and could have been sued upon by them. Again, it could have been treated as their contract made in the trade name suggested. 2 C. J. 872. Obviously, therefore, this evidence constitutes no foundation for the instruction in question.

If we should be of opinion to affirm the ruling complained of, in view of the state of the evidence as to the amount plaintiffs are entitled to recover, our conclusion will not necessarily involve determination on our part, that the verdict is excessive, as a matter of law. The decision will turn upon the inquiry as to whether there is such a degree of uncertainty and indefiniteness in the evidence or lack of evidence, respecting the amount of the verdict, as called for the honest judgment of the trial court, as to its sufficiency in that re-

spect. There was no jurisdiction or power in that court, arbitrarily to set aside the verdict. *Hodge* v. *Railroad Co.,* 79 W. Va. 174. The motion for a new trial based upon the theory of excessiveness of the verdict must have had a sufficient basis in the evidence, to call for the court's judgment upon the question. Moreover, if there was such a basis he did not decide the question at his peril. To the defect in the evidence, calling for his judgment, he could add discretion, by reason of the superior advantage he had, for determination of the weight and value of the infirmity, arising from his having presided at the trial, heard the witnesses and observed their appearance, demeanor and conduct. *Shipley* v. *Virginian Ry. Co.,* 87 W. Va. 139, 145; *Maupin* v. *Insurance Co.,* 53 W. Va. 557; *Miller* v. *Insurance Co.,* 12 W. Va. 116; *Black's Adm'r.* v. *Thomas,* 21 W. Va. 709.

If the opinion expressed by one of the plaintiffs, testifying in the case, as to the amount of coal that could have been produced by the plaintiffs, from their mine, between the date of the breach of the contract and the end of the contract year, is correct, they could have produced only about 10,000 tons. The verdict assumes a probable or possible production of about 14,000 tons. Another of the plaintiffs who, as their engineer, had peculiar knowledge of the situation expressed the opinion that there was recoverable coal in the mine, susceptible of production within the period named, amply sufficient to make the quantity assumed or impliedly found by the jury. But his evidence was, to some extent, argumentative and lacking in personal knowledge of facts upon which his claim as to quantity was based. The main entries had run into a fault which thinned the vein down from over 30 inches to about 17 in one place and 19 inches in the other. On the left, the pillars had been drawn and the mine abandoned. On the right, there were 17 working places that held up in thickness, but they were obliquely approaching the property line. The witness assumed that the fault in the mine would not intercept the working places on the right, and that, in passing around it, several acres could be mined, in addition to the three that concededly were good.

He also asserted the possibility and practicability of opening another mine on the lease, within a month and at a cost of about $500.00. Against this evidence, it was further disclosed, that the production, except as to three months, was light and costly, and the lease was surrendered, January 1, 1922. We are of the opinion that the trial judge, in view of this uncertainty in the evidence, as to the quantity of coal in the mine, recoverable within the life of the contract, and the impressions he may have derived from his observation of the witnesses and parties, in the course of the trial, did not abuse his discretion, in the award of a new trial, on the ground of excessiveness of the damages.

Upon these principles and conclusions, the judgment complained of will be affirmed.

*Affirmed.*