TELL McDONALD *et al. v.* A. E. STEWART *et al.*

(No. 6757)

Submitted March 11, 1931.   Decided March 17, 1931.

*J. D. Jones* and *B. W. Craddock,* for plaintiff in error.
*S. P. Bell,* for defendant in error.

MAXWELL, JUDGE:

In this action McDonald and Jarvis, partners, assignees of a note executed by A. E. Stewart to Loyd Louden and endorsed by W. A. Moore as accommodation endorser, and Louden as assignor, seek to enforce payment of the note. At the trial, Moore defended on the ground that upon the note's being protested for non-payment, he gave due notice to the plaintiffs to sue in compliance with Code 1923, chapter 101, sections 1 and 2, Revised Code 1931, 45-1-1 and 2, and that plaintiffs failed to do so within a reasonable time. Louden was not served with process. The jury found against Stewart, but in favor of Moore. The court set aside so much of the verdict as found for Moore and awarded a new trial as to him. Writ of error was awarded Moore.

Moore, as accommodation endorser, placed his name on the back of the note prior to its delivery by the maker to the payee. Under the uniform negotiable instruments law, he has the status of an endorser, Code 1931, 46-5-4, and is liable to the payee and all subsequent parties. Idem, sec. 5. The statute first above cited, Code 1931, 45-1-1 and 2, under which Moore seeks to make defense, is broad in its provisions and applies to endorsers as well as sureties and guarantors. *Shields* v. *Reynolds*, 9 W. Va. 483, 489. The point made in argument that secs. 1 and 2, chap. 101, Code 1923, are repealed by implication by sec. 120, chap. 98A, Code 1923 (The Negotiable Instruments Statute) in so far as the said sections 1 and 2 pertain to endorsers of negotiable instruments, is not well taken. The law does not favor the repeal of statutes by implication. *Kimball* v. *Loughney*, 70 W. Va. 765. And then, too, the legislative intent that the said section of the negotiable instruments statute should not operate to repeal the older statute in the manner above indicated clearly appears from the re-enactment of said section 120 as it now appears in the Revised Code of 1931, 46-8-2. Sub-section (d) of that section as amended reads: "This section does not include the rules governing the discharge of a surety or party secondarily liable because of such secondary liability."

The first question is, did Moore in fact give such notice as is required by the statute? The testimony discloses that a short time after notice of protest was received by Moore, he wrote the firm of McDonald and Jarvis a letter (not adduced in evidence because lost) in which he says he notified them to "sue at once" and "the sooner they would sue on it the better it would be for all parties." It is not shown that the letter came to McDonald's attention, but Jarvis admits the receipt of the letter. He disregarded it. His testimony as to its contents is that Moore stated therein that he was not going to pay the note unless compelled to do so. In reply to an inquiry as to whether the letter contained a notice to sue, he testified: "No sir, He (Moore) wasn't going to pay it unless he had to is what he said, or along that line. I didn't consider it a notice." The jury's verdict resolving in favor of Moore this conflict of evidence as to what the letter contained must be respected.

The contents of the letter thus having been determined, the question arises, was this sufficient notice under the statute? It does not appear wherein the notice was insufficient. It was substantial compliance with the statute. The expression "sue at once" is equivalent to notice "forthwith to institute suit." The exact language of the statute need not be used. *Frye* v. *Eisenbiess*, 56 Ind. App. 123, 104 N. E. 995. "Technical accuracy is not required. It is sufficient if the notice is positive, and the creditor is not misled." Brandt, Suretyship Guaranty, (3d Ed.), Vol. II, page 1352. Other matters in the letter may be treated as surplusage.

Another objection of plaintiffs went to the manner of communicating the notice to Jarvis. It is urged that a notice under Code 1931, 45-1-1, must be formally served; that the service of such notice comes within the provisions of Code 1931, 56-2-1, which prescribes the manner of serving notices, no particular mode of serving which is otherwise prescribed by statute. The object of formal service of a notice upon a party is to insure his receipt of the same, and obviously where such party admits the receipt of a communication purporting to contain a notice, the means of delivery of the same to him becomes of secondary importance.

It is also urged by plaintiffs that under the statute it was incumbent upon Moore to show that the maker and assignor of the note were within the state and solvent at the time the notice was given to plaintiffs by Moore, and that in the absence of such affirmative showing by him, he is not entitled to be relieved from liability on the ground that he had given the required statutory notice to the creditors, and that they had not complied therewith within reasonable time. There is thus presented for determination the question of whether in a suit by a creditor against an endorser or surety who has given notice to the creditor forthwith to institute suit against the principal and all others obligated with him, and the creditor has not complied with such notice by instituting such suit within a reasonable time, the burden devolves upon the endorser or surety who gave such notice to prove that at the time thereof the principal was resident within the state and solvent, or whether the onus rests upon the creditor to prove, in justification of his failure to institute suit in compliance with such notice, that the party primarily liable on the note, at the time the notice was given was either nonresident or insolvent. In support of the proposition that in such circumstances the burden rests upon the creditor, we have the case of *Gillilan* v. *Ludington,* 6 W. Va. 128, wherein there was under consideration the sufficiency of a special plea by the defendant that he had given notice as required by statute to the creditor, plaintiff's decedent, to institute suit forthwith, but that there had been failure of compliance therewith. The plea was challenged because it failed to allege that the creditor had not instituted suit against every party to the contract who was a resident of the state and not insolvent when the notice was given. In discussing this matter, the court said, at page 140: ''The plea before us sets out that the defendant, the surety, has done what the first section of the statute requires him to do, and all that it requires him to do; it omits to state, beyond reciting the fact that the plaintiff had failed to institute suit in a reasonable time, and the legal consequence which followed, the further particulars connected with the suit, as mentioned in the second section. But these matters are made by the statute the duty of the

creditor and are supposed to be peculiarly within his own knowledge. He is supposed to know where his debtors reside, whether in or out of the state; whether they are solvent or insolvent, and whether he has prosecuted a suit against them with diligence or not. These are matters more likely to be known to him than to the surety; and if on receiving the notice he has complied with these requirements of the statute, he can readily reply then by way of avoidance to the plea." We find enunciation of the same principle in the case of *Strickler* v. *Burkholder*, 47 Pa. St. Repts. 476, syllabus, point 2: "In an action against the surety by the holder, the burden of proof is on the plaintiff to show that the money could not have been collected if suit had been brought when notice was given."

On first consideration this rule seems reasonable, but its unsoundness is disclosed by close analysis of the principles involved and by careful examination of the authorities. In our own jurisdiction the above quoted holding of the *Gillilan* case has been either overlooked or ignored in subsequent cases dealing with that subject. In *Barnes* v. *Boyers*, 34 W. Va. 303, syllabus 1 reads: "A plea drawn under sections 1 and 2 of chapter 101 of the Code, which authorize a security to notify the creditor to institute suit against the principal and provide, in default of his doing so in a reasonable time thereafter, that he shall forfeit his right of recovery against such surety, should aver not only the solvency of the principal at the time suit should have been instituted, but also that he then resided in this State." In *Remage* v. *Marple*, 76 W. Va. 379, 382, the Court, in making reference to the statute now under consideration, stated: "The statute does not require the creditor to proceed against an insolvent debtor. The provision is that he shall forfeit his right against the surety if he shall not within a reasonable time after notice 'institute suit against every party to such contract who is a resident in this state and not insolvent.' Solvency of the principal obligor is essential to such release." If the principal debtor is not solvent and resident within the state, the surety has no right to require the creditor to sue. In such situation the complaining surety must rely upon contribution among the

sureties for partial relief from the burden of the debt, when that burden shall have been discharged.

In Moore's special plea he averred not only that he had given the plaintiffs notice to sue and that they had not done so within a reasonable time, but further that at the time of the giving of such notice and for some time thereafter every party obligated upon said note was a resident of this state and not insolvent. The plea correctly presents these matters and properly concludes with a verification, Hoggs Pl. & Forms, p. 251; Kittle on Assumpsit, p. 677. The plaintiff replied generally and issue was thereon joined. When a plea introduces new matter, it should not tender issue by concluding to the contrary (Stephen on Pleading, 3d Am. Ed., p. 192); but should conclude with a verification "in order that the other party may have an opportunity of answering it." 1 Chitty on Pleadings (11th Am. Ed.), p. 557. (This rule applies also to replications which introduce new matter. *Virginia, etc. Ins. Co.* v. *Saunders,* 84 Va. 210.) It is a general rule of evidence that a defendant must prove matters while he alleges to defeat the plaintiff's demand, if such matters are not admitted by the plaintiff, and provided they do not in effect amount to a mere denial of such demand. 2 Ency. of Evidence, p. 794. "If the defendant admits all the material allegations, and seeks to avoid the apparent liability growing out of such admissions by setting up new matters in avoidance, he must prove the facts necessary to establish his defense, and thereby overcome the plaintiff's apparent right to recover." *Cook* v. *Guirkin,* (N. C.) 25 S. E. 715. Where an action is upon a promissory note and the signature of maker or endorser is not denied by affidavit or sworn plea (Code, 56-4-46), the plaintiff discharges his burden of establishing a *prima facie* case by the introduction of the instrument and proof of its ownership. If it be a negotiable instrument, the holder is presumed to be the owner. Code 46-4-9. "But where the party having the burden of proof gives competent and *prima facie* evidence of a fact, and the adverse party, instead of producing proof which would go to negative the same proposition of fact, proposes to show another and a distinct proposition which avoids the effect of

it, there the burden of proof shifts, and rests upon the party proposing to show the latter fact." *Powers* v. *Russell*, 13 Pick. (Mass.) 69, 77. See also *Clifton* v. *Weston*, 54 W. Va. 250, wherein at page 260, the Court quotes with approval from Jones on Evidence, sec. 178: "The burden of proving any given claim or defense rests upon the one who asserts it." Where a defendant relies "upon an affirmative defense, as in abatement, or confession and avoidance, which plaintiff denies, the burden of proof is on defendant to prove every material allegation relied on by him * * *." 22 Corpus Juris, 73. The plea at bar involves four material allegations: (1) the giving of notice; (2) the failure of plaintiffs to sue within a reasonable time after receipt of notice; (3) the solvency of all obligated parties on the note at the time of the notice and for a reasonable time thereafter; (4) the residence of such parties within the state at the time of the notice and for a reasonable time thereafter. These matters being traversed by plaintiff's replication, upon what possible ground could Moore be excused from proving them, particularly as to the principal debtor, Stewart, if he (Moore) would sustain his defense thereby? It would be an anomaly to hold that the defendant carries the burden of proving only a part of the allegations of his special plea, and that the burden as to the others of such allegations devolves upon the plaintiffs.

The precursor of our statute for the relief of sureties and endorsers was enacted by the State of Virginia in 1794. The situation or mischief which the statute was intended to remedy was "that a creditor having his debt secure, and being careless whether he made it out of the real debtor or the surety, would often delay to sue till the debtor became insolvent, and the whole burden was thrown on the surety, nor had he any mode of protection, but by the tedious and expensive proceeding of a bill *quia timet* in equity. The remedy which the statute gives instead of this, is a written requisition to the creditor to sue; and if after receiving this, he chooses to give indulgence, it is at his own risk. The object of the statute being protection to the sureties, we must to that end, give it a liberal construction; more especially, as it is to take

the place, in a measure, of the equitable remedy, and is itself founded on equitable principles.'' *Wright's Adm'r* v. *Stockton,* 5 Leigh 153. In *Harrison* v. *Price,* 25 Gratt. 553, the court said: ''The statute creates no equities in favor of the surety against the creditor, but proceeds on the ground of an equity in the surety against his principal, and is designed to make it availing; and holds the creditor responsible only for its infringement. *(Humphrey* v. *Hitt,* (Va.) 6 Gratt. 509.) Independently of the statute, the surety might enforce his equity against the principal. If he was apprehensive of loss by the delay and forbearance of the creditor, he might file his bill in chancery to compel his principal to pay the debt. The statute gives him a more summary remedy, but does not change the relation or the contract between the creditor and surety. It only holds the former responsible, if by reason of his laches or negligence the sureties' equity against his principal is infringed.''

On the subject of the right of a surety to proceed in equity to require the principal to pay and the creditor to receive the money, see the following: 1 Barton's Chancery Practice, p. 35; 4 Pomeroy's Equity Jurisprudence (3d Ed.), p. 2793; 1 Story's Equity Jurisprudence (14th Ed.), sec. 451; *Stephenson* v. *Taverners,* (Va.) 9 Gratt. 398; *Croughton* v. *Duval,* (Va.) 3 Call. 69, 73; *Devries & Co.* v. *Johnson et al.,* (Va.) 27 Gratt. 805; *Neal* v. *Buffington,* 42 W. Va. 327, 329.

Our statutory proceeding for the relief of sureties and endorsers having been devised to avoid the necessity of the expense and delay of a chancery suit, but for the same general purpose, the requirement of proof placed upon the surety or endorser by the statute must be considered in the light of requirements which he would assume in a chancery suit. Therein, of course, ultimate relief could be obtained by him as such surety only if the principal were compelled to discharge the debt himself. In order that this might be required of the principal he must have been resident within the state and solvent. The surety prosecuting such suit necessarily carried the burden of making a case, whether he proceeded directly against the principal or whether he undertook to compel the creditor to proceed at the surety's risk and cost. And if,

instead of employing the chancery remedy, the surety or endorser turns to the statute for relief, he none the less carries the burden though the procedure is simplified. Therefore, a surety or endorser who undertakes to avail himself of the provisions of Code 45-1-1 and 2, and thereafter seeks to set up such matter as a defense to an action against him by the creditor, must aver in his special plea and prove not only that he gave the notice prescribed by the statute and that the creditor failed to sue within a reasonable time, but also that at the time of the giving of the notice and for a reasonable time thereafter, the principal was solvent and resident within the state. The basis of the relief of a surety or endorser from his serious undertaking and binding obligation is not the mere giving of the statutory notice by him, but the unconscionable delay on the part of the creditor after receipt of such notice, with probable resultant prejudice to the surety or endorser. But, such creditor's delay cannot be said to be unconscionable, unreasonable or improper if at the time of the notice the principal debtor is residing without the state or is insolvent, or becomes non-resident or insolvent within a reasonable time after the notice was given. The dereliction of the creditor must be proved by the surety or endorser who alleges it.

It probably sufficiently appears inferentially from the record, though the fact was not affirmatively proved, that Stewart was resident within the state at the time of the giving of the notice and for a reasonable time thereafter, yet because of the total absence of proof adduced by defendant Moore, or otherwise appearing, that Stewart was solvent at the time of the notice and for a reasonable time thereafter, the verdict of the jury exonerating Moore from liability was not warranted by the evidence, and the trial court rightly set it aside.

We, therefore, affirm the judgment.

*Affirmed.*