Louis A. DeLuz, *et al.*

*v.*

C. W. Board

(No. 10329)

Submitted April 25, 1951.  Decided May 15, 1951.

*John H. Reed, Jr.,* for plaintiff in error.

*Dewey B. Jones,* for defendants in error.

Fox, President:

The defendant, C. W. Board, doing business as the National Scale & Fixture Company, was, in May, 1949, engaged in the business of distributing store and restaurant fixtures, including refrigerating machines, with headquarters in Charleston, West Virginia, and the territory in which he operated included southern West Virginia. He had a number of men employed to sell on commission

the equipment he handled, and about May, 1949, he employed the plaintiffs, Louis A. DeLuz and F. E. Newhouse, for that purpose. They continued to work for the defendant until the latter part of July or early August of that year, and made a number of sales. The commission agreed upon was twenty per cent as to all of the sales involved in this action, and on that point there is no conflict in the evidence.

This is an action of law, by way of notice of motion, instituted in the Circuit Court of Kanawha County, on January 7, 1950, to recover the sums claimed as balance due on commissions for sales made under the agreement above. The itemized statement filed with the notice of motion consists of thirteen items, representing that number of sales transactions on which the plaintiffs claim commissions due. There was the usual affidavit accompanying the notice of motion, and a counter affidavit filed by the defendant denying that any sum was due the plaintiffs. Defendant also filed his general issue plea, and a special plea denying that any commissions were due on the Brawley, Miller and Bloxson sales, included in the itemized statement aforesaid; and also filed his plea of recoupment claiming that there was due from the plaintiffs to him, on matters growing out of the transactions between them, the sum of $195.00. The case was tried on June 2 and 3, 1950. The plaintiffs admitted that $125.00 of the items set up in the plea of recoupment was due the defendant. The verdict of the jury was in favor of the plaintiffs for $683.34, being the full amount claimed by the plaintiffs, less the $125.00 so admitted to be due defendant, and which was obviously credited by the jury on the total claim filed. A motion to set aside the verdict was overruled, and judgment entered thereon June 14, 1950. On petition of the defendant, the case is here on writ of error.

There is some conflict in the evidence as to the exact terms of the contract between the plaintiffs and the defendant. There is no dispute as to the commission to be allowed, which was twenty per cent; and there appears

to be no dispute that upon the consummation of a sale plaintiffs were to be paid fifteen per cent commission, but the plaintiffs do not admit that the defendant was authorized to retain the other five per cent. However, it is clear from the evidence that when the first sales were reported and settlement made for commissions, the defendant retained five per cent, which he says was retained to guarantee him against loss should purchasers fail to complete payments, it being admitted that most of these sales were made for part cash, and credit terms allowed, and that the remainder of the purchase price was secured under conditional sales contracts under the statutes of this State. It is not denied that when the settlement was made on the first sales, defendant retained five per cent for the purpose aforesaid, and explained its purpose; but the contention of the plaintiffs' is that while they acquiesced in this procedure, it was agreed at that time that in case they terminated their connections with the defendant, they were then entitled to be paid any retained commissions in full. The defendant denies this and there is, therefore, conflict as to when the plaintiffs became entitled to full and complete settlement on sales made by them. The jury evidently accepted the contention of the plaintiffs in this connection, and we are not disposed to disturb their action. The evidence tends to show that as to only two of the items sued for had there been a complete payment of the purchase money due the defendant.

Before going to the merits of the case, which involves proof as to the account relied upon for recovery, there are two matters calling for comment. The first grows out of the following situation: The trial of the case began on June 2, 1950, and was partially tried on that day. The case had been so far developed that the trial judge apparently saw that it was very involved, and just prior to adjournment for the day, made the following statement:

"* * * Forgetting about the reserve, I assume all these commodities were sold for enough cash

in the event they defaulted the deferred payments the seller would be fully protected on the purchase price under the conditional sales contract law.  It seems to me that you should be able to agree upon some terms of settlement because it is a difficult case to get the exact facts on and you really don't have much to litigate here. * * *"

He also stated:

"* * * It seems to me that from my understanding of conditional sales contract the defendant is not going to lose anything on that account. * * *"

He then went on to say they were entitled to a trial if they could not agree.

On continuing the trial, on June 3, exception was taken, by counsel for the defendant, to the statement of the court quoted above, whereupon the court told the jury:

"Well, that has nothing to do with the case, of course.  I was simply trying to see if both parties could not adjust a difficult situation.  Gentlemen of the jury, you understand, I am sure, what the Court had in mind.  You will not give my remarks any consideration as having any bearing on the case we are trying.  That was simply addressed to counsel in an effort to adjust this matter.  If you cannot do that the jury will have to try to settle it for you, and the only reason for that remark was to try to see if we could not effect a compromise of something that is going to be very hard for a jury to understand, I think."

The remarks of the court are alleged to be error, justifying reversal of the judgment in this case.  We do not think they should be given that force and effect.  A reading of all of the evidence in this case indicates that it would have been well for the parties to have followed the court's suggestion.  It is true that though the court did assume that there would be no loss to the defendant on any of the sales made, and there is evidence in the case indicating that on some of the sales there would be

a loss, it is quite clear that the court was not attempting in any way to influence the jury, and the remarks were directed to the litigants and their counsel, although in the presence of the jury. When attention was called to the possible effect of said remarks, the court promptly directed the jury not to consider them, and we do not think in these circumstances that we can say that the jury was presumed to have been influenced thereby in the verdict they returned.

The other question raised is what is termed a refusal of the court to permit the defendant to present instructions to the jury. At the end of the trial, the court made this statement:

> "All right. You don't need instructions in this case. There are no matters of law involved. There are a few questions of fact for the jurors to determine as to what the arrangement was between these parties. Of course, I am not going to deprive you of the right of argument."

The court was entirely correct in saying that there was no question of law involved. Of course, if either party had presented instructions pertinent to the case, which correctly stated the law, it would have been the duty of the court to have given them. We cannot say that there was any reversible error in what the court did, because we do not have before us any tendered instructions. The only way either party could raise that question was to have offered proper instructions and the court to have refused to give them. We can think of only one instruction which might have been proper in this case, and that would be on the question of burden of proof, but no such instruction was offered.

We now come to the merits of the case, and we are of the opinion that the verdict returned by the jury is not supported by the evidence, is plainly wrong, and, will, therefore, have to be set aside, and the judgment based thereon reversed.

As stated above, the account filed with notice of ac-

tion consists of thirteen items. Discussing these items in the order they appear on account, the first item is dated May 6, 1949, and is supposed to represent the balance of commission due on a sale of certain equipment to Sherman Craig, at the price of $1,635.00, the commission on which, at twenty per cent, amounted to $327.00. The plaintiff, DeLuz, admitted that he was paid a commission of $289.75, but claimed that there was still due the plaintiffs the sum of $59.25. A correct calculation shows a balance due of $37.25, or $22.00 less than the amount stated in the statement filed with the notice of motion. The next item was dated May 21, 1949, in the amount of $110.00, which the plaintiffs say represents commissions on a sale to Sherman Craig in the sum of $825.00, commissions on which would be $165.00, and on which $55.00 had been paid, leaving a balance of $110.00. The next item is a sale of $900.00 to one Charles Saunders, dated May 21, 1949, on which it was said that $150.00 commissions were paid, leaving a balance of $30.00. The next item is one of $30.00 representing a sale made to Charles Saunders on May 21, 1949, which was said to represent commissions on the sale of a Victor adding machine, which was sold at the price of $65.00. It is not satisfactorily explained how there could be a $30.00 commission on such a sale. The next item represents a sale made June 4, 1949, to F. H. Miller. There is much confusion as to this sale. The amount of the sale was $1,545.00, and the commissions at twenty per cent amounted to $309.00. Plaintiffs say they were paid $192.50, and they were still claiming $51.50 as due. It is apparent, of course, that if only $51.50 was still due, some additional payments on commissions had been made. There is no satisfactory explanation of the item of $7.49, representing the sale to Bert Ramsey. The sale to him amounted to $199.95, and commissions would have been $39.90. Plaintiffs state that they were paid $53.95 as commissions. How there could be any balance due on that transaction, the record does not disclose. Next was an item representing a sale to W. E. Miller, dated July 14, 1949, in the amount of $1,315.00. This was a cash transaction. Plain-

tiffs were paid all of their commissions except two per cent discount which was allowed the purchaser for this cash payment. We think the jury properly held that plaintiffs were entitled to this two per cent item, although that two per cent should have been calculated on the basis of $1,315.00, less the two per cent for the discount allowed, but the amount involved in this correction is small. Another item covering a sale to Holly Abshire, dated July 16, 1949, is, we think, properly proved. We find no evidence upholding the items of $45.00, covering a sale to W. W. Hoyleman, $11.00 covering a sale to Richard Walker, and $11.80 covering a sale to C. R. Buckland.

The item of $104.00, representing a sale to Albert Bloxson, is disputed by the defendant. He contends that he himself made this sale, and that the plaintiffs are not entitled to any commissions thereon. The defendant claims that this transaction was closed between him and Bloxson at Mount Hope, West Virginia, after the plaintiffs had terminated their relations with him as agent and salesmen. On the other hand, the plaintiff, Newhouse, claimed he negotiated the sale and was present at the time it was consummated, but that his particular work in connection with the sale was to interest Mrs. Bloxson in the merchandise. The jury evidently accepted the version of Newhouse on this transaction and allowed the whole amount. This transaction, according to the testimony of Newhouse, was the sale of certain equipment at $695.00, for which $140.00 was paid in a trade of other equipment, and a cash payment of $35.00, reducing the amount due to $520.00, on which plaintiffs were claiming commissions of $104.00. It will be noted that plaintiffs apparently do not claim commissions on the equipment taken in as trade, or at least they did not do so in the Bloxson transaction. This fact may have something to do with the next item to be considered.

The final item about which there is serious controversy is the item of $302.00, representing a sale made to Oscar D. Brawley. This was a sale of certain equipment to the Dudley Market, operated by Brawley in Charleston,

at the price of $1,510.00. There was accepted in trade equipment owned by the proprietor of the market for which an allowance of $700.00 seems to have been made. At another point in the testimony, however, the defendant states that the cash or credit transaction on this sale was $900.00, the commissions on which would be $180.00, if we apply the same practice as seems to have been followed in the Bloxson transaction mentioned above. The equipment accepted in trade on this transaction with the Dudley Market, or Brawley, was later sold at Beckley for the sum of $595.00, and in that transaction a check in the amount of $100.00 was given by the purchaser to the plaintiff Newhouse, and he received $50.00 in another transaction concerning a "pop" case, and the balance due, $445.00, was turned over to the defendant, and it is assumed he is in a position to collect the same. We are presented with this situation, on which the record does little to enlighten us: If we deal with the Brawley transaction as a whole, allowing commissions on the entire sale, the item of $302.00 is correct. We think, under all the circumstances, that the jury was warranted in holding, as it did, that the plaintiff DeLuz made this sale. If we do so, then we should allow the defendant a credit of $150.00 which was paid to him in connection with the sale of equipment at Beckley to the Mitchells, the equipment taken in trade. To allow commissions on the Beckley sale in addition would, in effect, be allowing plaintiffs double commissions on one transaction; but even if we did so, the commission on the sale at Beckley amounted to $119.00, and there would still be a further credit of $31.00 which should have gone on the $302.00 item. The defendant testifies that the money received by Newhouse, growing out of the sale to the Mitchells at Beckley, was for the settlement of plaintiff's claim to any compensation in connection with the Brawley sale, but this is denied, and the jury accepted plaintiff's contention on that point. In our opinion, commissions properly allowable to plaintiffs, in connection with this sale to Brawley, was on the $900.00 remaining due after the acceptance of the old equipment in trade,

and that instead of commissions being $302.00, they should be calculated as $180.00, as was done in the Bloxson transaction, according to the testimony of one of the plaintiffs. We are further of the opinion that the sale at Beckley was a separate transaction on which commissions have been paid in full with a balance of $31.00 which should be credited on plaintiff's claim.

The Court, on the evidence presented, confesses its inability to determine the exact rights of the parties to this litigation. There should be no particular difficulty in working this problem out if we had all of the facts before us. The litigants have not chosen to present to the court and jury sufficient evidence of their transactions to enable them to reach a correct conclusion. The jury accepted the contention of the plaintiffs. The circuit court accepted their verdict. Ordinarily we would be disposed to do so. It is, however, so apparent to us that plaintiffs have failed, in many particulars, to sustain their claim in full that we conclude and hold that there should be a new trial of this case in the hope that the parties will furnish the court and jury with sufficient facts to enable them to reach an intelligent and just verdict. The courts are supposed to sit for the purpose of bringing about justice, and in a case such as this, where it is clear to us that the verdict returned is not supported by the evidence produced, and is plainly wrong, we can do nothing else than set it aside, and this we do.

We reverse the judgment of the Circuit Court of Kanawha County, set aside the verdict on which such judgment is based, and remand the case to said court for a new trial.

*Reversed and remanded.*