J. A. J. LESTER, *Adm'r.*

*v.*

PAT J. FLANAGAN

(No. 11007)

Submitted January 26, 1960.   Decided March 8, 1960.

*M. E. Boiarsky, R. L. Theibert,* for plaintiff in error.

*Paul D. Blackshear,* for defendant in error.

BROWNING, PRESIDENT:

Plaintiff, J. A. J. Lester, Administrator of the estate of Josh West, deceased, instituted this motion

for judgement proceeding in the Circuit Court of Wyoming County, on September 24, 1951, to recover $1,928.99, principal and interest, allegedly due his decedent from Pat J. Flanagan, defendant, by virtue of a promissory note in the amount of $1,700.00, dated June 1, 1949, payable six months after date. Defendant filed a plea of ''Payment and Release'', alleging the execution of a release of such obligation by the decedent on May ____, 1950, to which plaintiff filed a replication denying the ''purported written release'' was the act and deed of the decedent.

At the beginning of the trial, after the jury had been sworn, but prior to the introduction of any evidence, the court admonished the jury: ''* * * The only question you have to determine in this case is whether the signature on the release is the signature of Josh West. That is your only function, determine the signature of Josh West. That has been agreed to by counsel on both sides. All you have to consider is whether or not that is the signature of Josh West or not.'' The plaintiff then introduced the note in evidence, stating that it was then due and unpaid. The defendant, in his behalf, testified that the note had been paid and introduced in evidence a release, bearing the signature ''Josh West'' and witnessed by L. D. Wade. Wade testified that he knew Josh West and had witnessed his signature on the release in question. Mr. Billig, Cashier of the Castle Rock Bank in Pineville, in behalf of the defendant testified that the signature ''Josh West'' on the release was written by the same person who wrote the signature ''J. W. West'' on Defendant's Exhibit No. 4, known to be signed by plaintiff's decedent. In rebuttal, plaintiff introduced the testimony of P. C. Edwards, President of the Bank of Iaeger, where plaintiff's decedent maintained his account, who testified, in response to a question as to whether the same person had signed both the release and Defendant's Exhibit No. 4, ''If I had that signature on file, I wouldn't pay on this one''. Then, in answer to the question: ''Would you

say that Josh West did not sign that on number one?'', replied: ''No, I wouldn't say that. It is not exactly the same signature that we have on some checks.''

The jury returned a verdict in the amount of $2,133.50, and judgment was entered thereon, to which this Court granted a writ of error and supersedeas on July 3, 1958.

The plaintiff has filed two preliminary motions, one, to dismiss the writ of error and supersedeas on the ground that the transcript of evidence was not signed and certified by the trial court within the proper time, and, two, to exclude from the record a copy of a letter from defendant to the trial court, dated May 12, 1954, and a copy of an affidavit of Morris West on the ground that such were not a part of the record in the trial court. In regard to the motion to dismiss, defendant obtained an extension of time until November 16, 1957, within which to tender, and have signed and certified, the transcript of evidence as ''Defendant's Bill of Exceptions No. 1.'' The court's order shows that such was done on November 15, 1957, though such order was not entered in the Law Order Book until November 18, 1957. For the reasons stated in *Ketterman v. Dry Fork R. R. Co.,* 48 W. Va. 606, 37 S. E. 683, this motion is overruled. In regard to the second motion, the letter is in the nature of a memorandum of argument and purports to be in addition to a brief to be filed by defendant's counsel in support of defendant's motion to set aside the verdict and award a new trial. The affidavit of Morris West, taken on March 23, 1954, in general terms supports the position of the defendant, and defendant attempts to rely upon it as after-discovered evidence. However, there is no showing that it was ever properly made a part of the record in the case, or that any foundation has been laid upon which it might be treated as after-discovered evidence. Therefore, the affidavit will not be considered on this writ of error.

Eleven assignments of error are made in this Court, only two of which need to be discussed in this opinion. One, that the verdict is contrary to law and unsupported by the evidence, and, two, the refusal of the trial court to give Defendant's Instruction No. 2, which reads as follows: "The Court instructs the jury that the burden is on the plaintiff to prove his case by a preponderance of the evidence; and if you find that the plaintiff has not proved his case by a preponderance of the evidence your verdict should be for the defendant."

These two assignments of error are not unrelated. The term "burden of proof" has two distinct meanings, as has many times been held by this and other courts, and they should never be confused. Upon a plea by the defendant of not guilty, non assumpsit, nil debet, or any other plea that raises the general issue, the obligation is upon the plaintiff throughout the trial to establish by a preponderance of the evidence in a civil case, and beyond a reasonable doubt in a criminal case, proof of his or its allegation in his or its pleading, warrant, or indictment. Upon such a plea by the defendant, the burden of proof never shifts. However, the term "burden of proof", particularly in civil cases, may denote the obligation devolving upon the defendant, and perhaps passing from one party to the other as the case progresses to meet a prima facie case made by the opposing party. The latter meaning of the term is perhaps more accurately described as the necessity of going forward with the evidence. 31 C.J.S., Evidence, § 103; 20 Am. Jur., Evidence, § 131; 7 M.J., Evidence, § 29; 1 Jones on Evidence, Fifth Edition, §§ 204, 205.

In this jurisdiction, when a defendant enters a plea of payment, the burden is upon him to prove payment by a preponderance of the evidence. *Saunders v. Huffman,* 119 W. Va. 31, 192 S. E. 297; *McDonald v. Stewart,* 110 W. Va. 280, 158 S. E. 177; *Satterelli et al. v. Cropper,* 109 W. Va. 430, 155 S. E. 312; *Wood-*

*yard v. Sayre,* 90 W. Va. 547, 111 S. E. 313; *Linn v. Collins,* 77 W. Va. 592, 87 S. E. 934, Ann. Cas. 1918 C, 86; *Dodrills' Exrs. etc. v. Gregory's Admr.,* 60 W. Va. 118, 53 S. E. 922; *Sammons & Piercy's Exrs. v. Hawvers,* 25 W. Va. 678, 21 R.C.L. 119; *Rand & Minsker v. Hale,* 3 W. Va. 495. It is succinctly stated in the early decision of this Court of *Rand & Minsker v. Hale,* 3 W. Va. 495, by the 1st Syllabus Point: "A plea of payment, in an action on a bill of exchange, confesses the cause of action as set forth in the declaration." In the opinion, Judge Brown uses such language as this, quoting from Moore v. Fenwick, Gilmer, 214: "The plea of payment is an affirmative plea and the defendant takes the *onus probandi* on himself, and has the right to introduce his evidence and to open and conclude the argument. * * * ; a plea by a party in court confessing and avoiding cannot have a less effect as to the admission of the debt originally than a judgment by default." In that case, the defendant demurred to the declaration and pleaded payment.

*Satterelli et al. v. Cropper,* 109 W. Va. 430, 155 S. E. 312, was in this Court to review a judgment for the plaintiff upon a notice of motion for judgment proceeding on an account for labor performed and materials furnished. To the notice of motion for judgment, the defendant pleaded only the general issue. By stipulation of the parties previous to the introduction of evidence, and thereafter, it was admitted that the original debt claimed by plaintiffs was correct, and the only issue for jury determination was whether the defendant had paid the balance of the indebtedness amounting to the sum of one thousand dollars. The trial court refused an instruction offered by the defendant which is substantially in the language of Defendant's Instruction No. 2 in this case. It reads: "The Court instructs the jury that unless the plaintiff has proven the matters set up in the motion for judgment by a preponderance of the evidence, then they shall find for the defendant." This Court, in the

opinion, noting that there was no plea of payment, but only a plea of the general issue, held that it was prejudicial error to refuse the instruction tendered by the defendant. However, the Court was careful to point out that if there had been a plea of payment "the burden of proving such payment" would have been upon the defendant, and it would not have been error to refuse the instruction. After stating the rule as to burden of proof substantially, as heretofore stated in this opinion, and noting that the defendant not only had introduced her receipt of payment, but "fortified her position by oral testimony", the Court used this language which is pertinent to the assignment of error that the verdict in the instant case is contrary to the clear preponderance of the evidence if there be a conflict upon the validity of the release by the decedent of the obligation of the note upon which the action is based: "* * * This situation placed upon plaintiffs the necessity of rebuttal. 'There is not, however, any rule in respect to receipts different from that applicable to any other *prima facie* evidence. To destroy its effect it must be overbalanced by other evidence laid before the jury, which is to judge whether there is such a preponderance. No rule can be laid down as to either the kind or quantity of evidence which ought to outweigh the receipt. * * *. Where a receipt is properly introduced in evidence, the burden of proof to contradict or explain such receipt rests upon the party disputing it. * * *. Where the evidence supporting and that impeaching a receipt are balanced, the receipt must have its *prima facie* effect.' Am. & Eng. Ency. Law (2nd Ed.), Vol. 23, page 986." A short time after this Court decided the *Satterelli* case, Mr. Leo Carlin, a former professor in the Law School of West Virginia University, and perhaps the greatest authority in this State on common law pleading, wrote an article entitled "The Burden of Proving Payment" which appears in 37 West Virginia Law Quarterly 282. Mr. Carlin was inclined to accept the view of the dissenting Judge that the burden of proving payment always rests on the

defendant regardless of the nature of the plea. In discussing the function of the plea of payment, he said: "* * * It really functions as a common, or specific, traverse, rather than as a plea in confession and avoidance, and in this respect it is a misnomer to call it a special plea. * * *" It was not error for the trial court to refuse Instruction No. 2 offered by the defendant.

The release or "receipt" of payment which the defendant offered in support of his plea of payment has upon it the name of the deceased Josh West. The defendant, an Attorney of the City of Welch, West Virginia, for many years as the record shows, testified that he saw the deceased affix his signature to the release. Another witness, whose name was affixed to the release as a witness to the signature of West, and who, as far as the evidence shows, was disinterested, testified he saw West affix his signature to the release. The witness Billig, Cashier of a bank in Pineville, West Virginia, the city where this trial was held, comparing the signature on the release with the signature of the deceased West on another instrument that the witness Howard stated he saw West sign, was positive that the same man had signed both instruments. In rebuttal, the witness Edwards, also a banker for many years, and qualifying under the rule recognized in this State as a handwriting expert, *Johnson v. Bee,* 84 W. Va. 532, 100 S. E. 486, comparing in his testimony the signature on the release and the signature of West on the identified document, stated: "If I had that signature on file, I wouldn't pay on this one." But when he was asked this question on cross-examination, he made the following answer: Q: "Would you say Josh West did not sign that on No. 1?"; A: "No. I wouldn't say that. It is not exactly the signature that we have on some checks." Again, question and answer: Q: "You cannot say positively that it is not the signature of Josh West?"; A: "I wouldn't say it is or it is not." In rebuttal also, the plaintiff produced some oral testimony, particularly

that of a nephew of the deceased West who was rather firm in his statement that the deceased had not been in the City of Welch during the period when the release was alleged to have been signed. However, he admitted that it was possible for him to have been there.

In giving effect to the rule laid down in *Satterelli et al. v. Cropper,* 109 W. Va. 430, 155 S. E. 312, that: "Where a receipt is properly introduced in evidence, the burden of proof to contradict or explain such receipt rests upon the party disputing it.", and considering the positive oral testimony of the three witnesses for the defendant, this Court is constrained to hold that the verdict of the jury was contrary to the clear preponderance of the evidence. "Where in a trial of an action at law before a jury, the verdict returned is without evidence to support it, or is plainly wrong, it will be set aside by this Court, the judgment entered thereon reversed, and the case remanded for a new trial." Syllabus, *DeLuz, et al. v. Board,* 135 W. Va. 806, 65 S. E. 2d. 201. To the same effect see *Bower, Adm'r. v. Brannon,* 141 W. Va. 435, 90 S. E. 2d. 342.

The judgment of the Circuit Court of Wyoming County is reversed, the verdict of the jury set aside, and a new trial is awarded the defendant.

> *Reversed, verdict of the jury set aside; new trial awarded.*

CALHOUN, JUDGE, dissenting:

Being unable to agree with the majority of the members of the Court in their position that the evidence is insufficient to justify the verdict of the jury, approved by the trial court, I register my dissent earnestly but respectfully.

By stipulation of counsel, with the concurrence of the court, the single factual issue submitted for jury

determination related to the genuineness of the signature of Josh West appearing on the purported release. The affirmative of that issue, of course, was with the defendant.

The note in question, dated June 1, 1949, was placed for collection with the Bank of Iaeger on June 14, 1949. Josh West died on June 19, 1950, and thereafter the note was delivered to his personal representative by P. C. Edwards, cashier of that bank. Notices were sent by the bank to the defendant prior to the time the note became due. The evidence fails to disclose that the defendant made any response to such notices but the note in any event was not collected by the bank.

J. A. J. Lester testified that the note was delivered to him as administrator of the estate of Josh West; that thereafter he went to Welch to see the defendant in person concerning the note; that upon that occasion the defendant claimed that he was entitled to certain unspecified credits on the note, but that the defendant did not claim that the note was paid or that he had a written release purporting to show payment.

It appears from the testimony that prior to the death of Josh West the note was placed for collection with Paul D. Blackshear, a practicing attorney of Pineville. On May 30, 1950, (four days following the date of the purported release) Attorney Blackshear wrote a letter to the defendant containing, among other language, the following sentence: "I am directed to institute action, but will defer doing so for a few days to hear from you." On July 3, 1950, shortly after the death of Josh West, Attorney Blackshear wrote a second letter to the defendant calling attention to his prior letter and requesting a reply. The defendant admits receipt of both letters. When asked why he did not reply to these letters, making known his claim in relation to the release, the defendant

replied that he "didn't see any necessity writing to you [Blackshear]. I went looking for him [Josh West]."

Marshall G. West, a practicing attorney since June, 1953, testified that Josh West was his great uncle; that he operated a place of business for Josh West from July 14, 1949, until the uncle was taken to a hospital in June, 1950; that he opened and closed such place of business every day during that period; that after he "took over his business", he did "all the business"; that the uncle "didn't go anywhere unless I took him"; that he was certain that Josh West did not go to Welch on May 26, 1950; that he was "sure" Josh West did not sign the release during May, 1950; that meantime the witness "was with him on all business transactions"; that his uncle discussed this particular business transaction with the witness on many occasions; that "we had made two or three trips to see Mr. Flanagan before the last trip over there, and I guess as a result he employed counsel to collect the note"; and that "I would say, two weeks before he died he wanted me to see Mr. Blackshear here and see what he was doing with respect to collecting this note"; and that on one occasion, in the presence of the witness, the defendant did not mention payment or a receipt but "stated that he had some money down in South or North Carolina, that he was getting it from to pay Uncle Josh". When asked if it was possible for Josh West to have been at Welch on the day in question, the witness replied, "I guess it might be possible, but I certainly don't think so."

W. J. Billig, cashier of the Castle Rock Bank at Pineville, was shown a genuine signature of Josh West and the disputed signature, and testified that both signatures were made by the same person, though on cross-examination he admits that various dissimilarities were apparent. He stated further that Josh West, to his knowledge, had never maintained an account in his bank, and it does not appear that he was familiar with Josh West's signature. In other words,

his testimony appears to have been based solely on a comparison of the genuine and the disputed signatures.

P. C. Edwards testified that he was president of the Bank of Iaeger. Apparently he was or previously had been cashier and had been connected with that bank since 1931. He testified that his bank handled the bank account of Josh West, and that he was familiar with the signature of Josh West. When shown cancelled checks admittedly signed by Josh West, he testified: "I would recognize those as Mr. West's signature on those checks." When shown the disputed signature on the release, he stated that he would not have honored a check on Josh West's account on the basis of such signature, and "If I had the signature of one of these on file, I would not pay on the other one." When asked whether he could state "positively" that the disputed signature was not that of Josh West, he replied: "I wouldn't say it is  or it is not." Nevertheless, as one familiar with Josh West's signature, and as one connected for many years with the bank in which Josh West maintained his bank account, the witness did reiterate and adhere firmly to his statement that he would not have honored a check drawn upon Josh West's account on the basis of the signature appearing on the release.

The defendant testified that Josh West signed the release in the defendant's law office. He denies having received any notices from the Bank of Iaeger, implying that the testimony of the cashier is in error in this respect. He admits that J. A. J. Lester, the administrator, came to see him at Welch in reference to the note, but he contradicts the testimony of Lester by testifying as follows: "I told him I did not owe the note, I had credits on it and the release from Josh West for that note; I didn't have time to go back to the office then, if he would come back to my office, I would show it to him. The next thing I heard was a notice of motion." The defendant states further that the release does not bear the true date, but implies

that he may have struck the wrong key on the typewriter. He testified that his office is on the fourth floor of the First National Bank Building at Welch, a building having six floors; that when the release was ready for Josh West's signature it was during the lunch hour, and, therefore, he had Leonard D. Wade, an elevator operator, sign as a witness to Josh West's signature.

Leonard D. Wade testified that at that time and for perhaps thirty-two years prior thereto he had been an elevator operator in the First National Bank Building; that he was "going on seventy-six" years of age; that he remembered Josh West; that Josh West came to see Mr. Flanagan "very often", "lots of times"; that the witness is five feet, four inches in height; that Josh West was a "medium-size man", "A little taller than I am"; and that he witnessed the signature of Josh West in the "afternoon", but he does not recall the date. The testimony of relatives of Josh West indicates that he was six feet, five or five and one-half inches in height. In addition to being quite elderly, it is apparent that Leonard D. Wade is a man of meager education.

I believe earnestly that this case, involving the single issue of fact, in accordance with the stipulation of counsel, credibility of witnesses, conflicts in testimony and cogent facts and circumstances properly bearing upon the factual issue, was peculiarly one for jury determination.

The disputed signature and numerous genuine signatures of Josh West were introduced in evidence as a basis of comparison. These were before the jury for an exercise of their own independent judgment. The jury has returned its verdict and the verdict has been approved by the trial court. "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be consid-

178

ered, and those facts, which the jury might properly find under the evidence, assumed as true." *Butcher v. Stull,* 140 W. Va. 31, pt. 1 syl., 82 S. E. 2d 278. Not only are we required to give weight to the finding of the jury, but we are required to give due weight to the action of the able trial judge in sustaining such verdict "by reason of the superior advantage he had, for determination of the weight and value of the infirmity, arising from his having presided at the trial, heard the witnesses and observed their appearance, demeanor and conduct." *Ross v. Lake & Export Coal Corporation,* 92 W. Va. 229, 235, 116 S. E. 155, 157. The net result is that when a litigant comes before the appellate court with a verdict in his favor, approved by the trial court, he is in a favorable position which has been characterized as "the strongest position known to the law." *Waddell v. The New River Co.,* 141 W. Va. 880, 891, 93 S. E. 2d 473, 479; *Bower v. Brannon,* 141 W. Va. 435, 440, 90 S. E. 2d 342, 346; 1 M. J., Appeal & Error, Section 270, page 693. It is a mistake to assume that a cold record before this Court will always portray pertinent facts and circumstances as adequately as they appear to a trial jury and to a trial judge. This is a case in which circumstances speak eloquently and forcefully.

In the absence of error in some other respect, I would affirm the judgment of the Circuit Court of Wyoming County.