STATE OF WEST VIRGINIA *v.* THE CITIZENS NATIONAL BANK OF PHILIPPI *et al.*

(CC 476)

Submitted November 1, 1933.    Decided November 21, 1933.

HATCHER, JUDGE, dissenting.

*Homer A. Holt,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

*Frank Lively, Wm. T. George, Ware & Ware, Talbott & Talbott* and *Arthur S. Dayton,* for defendants.

WOODS, JUDGE:

This is an action on motion for judgment of the State of West Virginia against the Citizens National Bank of Philippi,

a corporation, and sureties on a depository bond. The sole question certified is whether the pleas filed by the sureties present a defense to the action against them. The circuit court of Kanawha County overruled the state's demurrer to the pleas.

The defendant bank, on April 30, 1931, executed its bond with the usual collateral condition to the state as a depository for state funds, with E. R. Dyer, K. G. Lodge, A. G. Waddell, W. D. Zinn, R. E. Talbott, George Waddell and H. G. Mundy, as sureties. The bank was declared insolvent on October 22, 1931. Demand was thereupon made on the principal and sureties for payment. Thereafter, the state, by the attorney general, served due notice on the principal and sureties that a motion would be made in the circuit court of Kanawha County on December 14, 1931, for a judgment against them under and by virtue of the conditions of said bond. On December 10, 1931, three of the sureties, Lodge, Zinn and the executors of Dyer, deceased, by their attorney, H. J. Wilcox, notified the attorney general in writing that they would resist any attempt to have the case continued (information having reached them that motion for judgment would be postponed) and insisted that it be heard as stated in the notice and judgment taken against all of said defendants on the return day; and, that, in the event of the state's refusal to take judgment, they would deny liability on the bond if any of the signers of the bond should become insolvent between the said 14th day of December, 1931, and the day upon which judgment should be taken, by reason of the fact that such insolvency would increase their liability thereunder. The attorney general, on December 12, 1931, answered that the board of public works had ordered that the action be not further prosecuted; and that the case was not docketed and would not be heard on December 12, 1931. The claim, however, was not abandoned, for the present notice of motion was served on the several signers of the bond and filed in the circuit court on December 12, 1932, nearly one year after the return day of the notice to which we have heretofore referred.

The pleas, which are based on Code 1931, 45-1-1 and 2, after setting up notice, and failure of the state to proceed, aver that since the former dismissal some of the signers of the bond

as sureties have become insolvent, and that the estate of Dyer had been settled up and discharged from liability by the inaction of the state.

The statute relied on provides:

> Sec. 1. "The surety, guarantor or indorser (or his committee or personal representative) of any person bound by any contract may, if a right of action has accrued thereon, require the creditor (or his committee or personal representative), by notice in writing, forthwith to institute suit thereon; and if he be bound in a bond with collateral condition or for the performance of some collateral undertaking, he shall also specify in such notice the breach of the condition or undertaking for which he requires suit to be brought."

> Sec. 2. "If such creditor or his committee or representative shall not, within a reasonable time after such notice, institute suit against every party to such contract who is a resident in this state, and not insolvent, and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety, guarantor or indorser or his estate, and all his cosureties and their estates, the money due by any such contract for the payment of money, or the damages sustained by any breach of the collateral condition or undertaking specified as aforesaid. But the conditions, rights, and remedies against the principal debtor shall remain unimpaired thereby."

The attorney general claims that the statute is limited to the protection of the sureties against any infringement of rights which the creditor or the sureties may have against the principal debtor; or, in other words, the statute gives no protection to a surety against another surety.

The letter, which the defendants claim to be a proper notice under the statute, required the state to immediately proceed. In the article on Principal and Surety, 50 C. J. 178, sec. 288, it is stated: "Under statutes giving a surety a right on general terms to compel action by the creditor by giving him written notice and discharging him from further liability on the creditor's refusal or failure to comply, insolvency of the principal at the time notice was given by the surety, or

so soon thereafter as to make an action futile, or at the time the surety contract was entered into, is an excuse for creditor's noncompliance and the surety is not discharged.'' In accordance with this provision, it is contended that our statute gives no protection to a surety against another surety, by requiring the creditor to bring suit against the sureties; but that it is limited to a surety's requiring the creditor to bring suit against the principal debtor. It will be noted that Lodge, Zinn and the executors of Dyer, deceased, in the letter written on their behalf, had advised the state that, in case the latter failed to proceed and any of the co-sureties should become insolvent between the 14th day of December, 1931, and the day upon which judgment was actually taken, they would deny liability on the ground that they had been released by reason of the state's inaction, whereby such insolvency had been permitted.

It may be well for us to look to the history of the statute now under consideration. The original statute in the Virginias was enacted by the general assembly of the mother state in 1794. 1 Rev. Code (1819), Chap. 116, sec. 6, p. 461. Section 8 of the chapter cited provided that sections 6 and 7 should not be construed as to affect bonds with collateral conditions, or bonds of guardians, executors, administrators, or public officers. The foregoing limitation was removed by sec. 5, chap. 54, Acts of 1843-4. In the Revisors' Report of Virginia of 1849, preceding the Code of that year, we find that the said statute was changed to substantially the form which now appears in our revised Code of 1931. The report of the Revisors of 1849 in respect to this statute is as follows:

"It will be seen that this short section, while it is much more concise, is not only as comprehensive as those from which it is taken, but also introduces an important and essential provision. The first proviso, constituting part of the 8th section of the act of 1818, having been repealed by the act of 1843-4, sec. 5, it is obviously proper that the surety should point out to the creditor the particular breach of the collateral undertaking for which he requires suit to be brought, as it may well happen that the creditor may otherwise be required to sue, under pain of releasing his surety, when he does not know whether any

breach, or if any, what has been committed. We have framed the law so as clearly to embrace 'endorsers' and 'guarantors', and have inserted the word 'contract', to provide for cases in which a surety may be bound in other ways than by bond, bill or note. The word 'contract', is deemed sufficient by itself, as comprehending 'bond, bill or note', and covenants and other agreements also.''

Having determined the substance of the statute, let us look to the Virginia court for its construction. In the case of *Humphrey* v. *Hitt*, 6 Gratt. 509, at page 524, the court makes this statement: ''It follows that though a discharge of the debt whether by principal or surety, is available for either, yet that the surety can have no peculiar equity against the creditor to be absolved from his obligation, arising directly from the mere relation between them; but that such equity must be derived from the equities of a surety against his principal, and the infringement thereof by the conduct of the creditor. If the remedies or the rights of the surety against his principal be destroyed or defeated by the creditor, that furnishes a plain equity on the part of the surety against the further pursuit of the creditor; which is either absolute, or to the extent of the injury he has sustained.'' In this case the court was discussing the law as then obtained in 1 Revised Code, chap. 116, sec. 6, p. 461.

Later, in the case of *Harrison Ex'r.* v. *Price's Ex'r.*, 25 Gratt. 553, syllabus 5, and at page 563, is as follows: ''The statute which authorizes a surety to give notice to the obligee to sue, gives a surety a more summary remedy than he had before by a bill in equity, but does not change the relation or the contract between creditor or surety. It only holds the creditor responsible, if by reason of his laches or negligence the equity of the surety against the principal is infringed.'' In the opinion, the court said: ''The statute creates no equities in favor of the surety against the creditor, but proceeds upon the ground of an equity in the surety against the principal, and is designed to make it availing; and holds the creditor responsible only for its infringement. (*Humphrey* v. *Hitt*, 6 Gratt. 509). Independently of the statute, the surety might enforce his equity against the principal. If he was apprehensive of loss by the delay and forbearance of the creditor,

he might file his bill in chancery to compel his principal to pay the debt. The statute gives him a more summary remedy, but does not change the relation or the contract between the creditor and surety. It only holds the former responsible, if by reason of his laches or negligence the sureties' equity against his principal is infringed.'' This case was decided according to the revised Code of 1849. It will be noted that in both of these interpretations of the statutory code provisions the position taken by the state in this case is upheld.

Coming to our own state, we find only a paucity of cases in the interpretation of this particular statute. In the recent case of *McDonald* v. *Stewart,* 110 W. Va. 280, 158 S. E. 177, 179, Judge Maxwell, in the opinion of the Court, discusses very fully the history of the statute involving its relation to collateral conditions of a bond which are now a part of the statute. He says: ''The precursor of our statute for the relief of sureties and endorsers was enacted by the state of Virginia in 1794. The situation or mischief which the statute was intended to remedy was 'that a creditor having his debt secure, and being careless of whether he made it out of the real debtor or the surety would often delay to sue till the debtor become insolvent, and the whole burden was thrown on the surety, nor had he any mode of protection, but by the tedious and expensive proceeding of a bill *quia timet* in equity. The remedy which the statute gives instead of this, is a written requisition to the creditor to sue; and if after receiving this, he chooses to give indulgence, it is at his own risk. The object of the statute being protection to the sureties, we must to that end, give it a liberal construction; more especially, as it is to take the place, in a measure, of the equitable remedy, and is itself founded on equitable principles.' *Wright's Adm'r.* v. *Stockton,* 5 Leigh (Va.) 153.'' The opinion then follows with the major part of quotation hereinbefore set out from *Harrison* v. *Price,* 25 Gratt. 553. It is, therefore, readily seen that this Court follows the trail of the decisions made by the courts in Virginia. So we feel constrained to hold that the position taken by the state as to the interpretation of this statute is correct and that it is limited to the protection of the sureties against any infringements of rights which the creditor or the sureties may have against the principal debtor;

or, in other words, the statute was not designed to give protection to a surety against another surety.

Although the question is new and without precedent in the Virginias, so far as we have been able to see, this equity is quite as strong in favor of the surety (where the principal is insolvent) against a co-surety. If the principal is insolvent, and, therefore, the debt rests as a common and equal burden upon the sureties, do not the same considerations appeal with equal force to the chancellor, that he may see to it that one of them shall not, by wholly depriving himself of his property, fasten the whole of it upon the other? And should not one or more of the sureties upon becoming apprehensive of the solvency of a co-surety, be permitted to invoke the aid of a court of equity in order that each surety may be required to come in and share the burden? We think that the principle may well have this extended application. *Bowen* v. *Hoskins,* 45 Miss. 183; *Morrison* v. *Poyntz,* 7 Dana (Ky.) 307, 32 Am. Dec. 92; Note, 9 L. R. A. 411; *Davies* v. *Humphreys,* 6 Mees. & Wels. 153, 21 Eng. Rul. Cas. 632, 635.

So we must conclude that under the facts in this case the lower court erred in overruling the demurrer to the special pleas. The court should have sustained said demurrer, and we so certify.

*Ruling reversed.*

HATCHER, JUDGE, dissenting:

Being of opinion (1) that the statutory construction of the Virginia court which is followed herein is unnatural, and (2) that the facts in the Virginia cases and in our own case of *McDonald* v. *Stewart, supra,* clearly differentiate them from the instant case, I respectfully dissent.