**COLONIAL AMERICAN NATIONAL BANK, Plaintiff,**

v.

**Robert L. KOSNOSKI, Defendant.**

**Civ. A. No. 77–0274(R).**

United States District Court,
W. D. Virginia,
Roanoke Division.

June 20, 1978.

William R. Rakes, Gentry, Locke, Rakes & Moore, Roanoke, Va., for plaintiff.

Gerald A. Dechow, Martin, Hopkins & Lemon, Roanoke, Va., for defendant.

## OPINION

TURK, Chief Judge.

Colonial American National Bank (CNB) filed this action against Robert Kosnoski on December 8, 1977 to collect on a guaranty agreement executed by him on August 12, 1976. On June 5, 1975 a term note was executed by Edward G. Frye, III and John Barbour Frye in the amount of $372,272. This note was guaranteed by Frye Building Company, Edward G. Frye, III, John Barbour Frye, Ruth Townes Frye and Ernestine C. Frye. On the same date a term note in the amount of $200,000 was made by Frye Building Company and endorsed by Edward G. Frye, III and John Barbour Frye. A total of $150,000 was not disbursed on the notes because it was discovered that the company did not have full title to one piece of property which was to be used as collateral.

In the summer of 1976 the Company requested that the additional $150,000 be disbursed and the defendant agreed to guarantee payment of this amount. When the Guaranty (Plaintiff's Ex. # 4) was executed in August of 1976 the funds were disbursed. By letter dated September 30, 1977 the defendant was notified of default on the notes and that collection proceedings would commence if satisfactory payment was not made by October 12, 1977. Payment was not made and this suit was commenced.

On February 18, 1978 the defendant made a written request that CNB institute suit against all parties who made, guaranteed or endorsed the original notes. The

bank has not instituted suit and defendant argues that this failure to act releases him from all liability. Other defenses were also raised by the defendant at the trial of this matter on May 26, 1978. At the conclusion of the trial this court ruled that all defenses raised by the defendant with the exception of the one stated above were insufficient to preclude recovery. Both parties have submitted briefs on the remaining issue which is now ripe for decision.

The court must look to the Code of Virginia § 49–25 [1] and § 49–26 [2] to determine if CNB's failure to sue releases Kosnoski from liability as a guarantor. Section 49–25 allows a guarantor to demand that a creditor institute suit on the "contract" upon which the guarantor is bound if a right of action has accrued. Section 49–26 releases the guarantor if the creditor fails to institute suit, within fifteen days, against "every party to such contract who is resident in this State and not insolvent." The makers of the notes were either insolvent or residing out of the state at the time the demand to institute suit was made. However, at least one of the endorsers of the notes was a solvent Virginia resident. The decision in this case depends on whether the statute requires suit on the endorsers as well as the makers of the notes.

The original statute enacted in 1794 stated:

> That when any person shall become bound as surety for the payment of money or tobacco, and shall apprehend that his principal debtor is or is likely to become insolvent, it shall be lawful for the

surety to require by notice to the creditor to sue and if no suit within a reasonable time is brought the creditor forfeits his rights against the surety. 1 *Rev.Code*, c. 116, § 6, p. 461 (1819).

The statute was designed to give a surety a method of protection short of the bill *quia timet* in equity which was a tedious and expensive proceeding. *Wright v. Stockton*, 32 Va. 153 (1834). It was feared that a creditor, knowing his debt was secured, might delay in instituting suit until the debtor was insolvent.

The original statute was modified in 1849 to substantially its present form.

> [T]here is nothing in the statute which changes th[e] relation or the rights and obligations of the parties under it. The statute creates no equities in favor of the surety against the creditor, but proceeds on the ground of an equity in the surety against his principal, and is designed to make it availing; and holds the creditor responsible only for its infringement. Independently of the statute, the surety might enforce his equity against the principal. If he was apprehensive of loss by the delay and forebearance of the creditor he might file his bill in chancery to compel his principal to pay the debt. The statute gives him a more summary remedy, but does not change the relation or the contract between the creditor and the surety. It only holds the former responsible, if by reason of its laches or negligence the surety's equity against his principal is infringed. *Harrison v. Price*, 66 Va. 553, 563 (1874).

1. Virginia Code Ann. § 49–25. Surety may require creditor to sue.—The surety, guarantor or endorser, or his committee or personal representative, of any person bound by any contract may, if a right of action has accrued thereon, require the creditor or the committee or personal representative, by notice in writing, to institute suit thereon, and if he be bound in a bond with a condition, or for the performance of some collateral undertaking, he shall also specify in such requirement the breach of the condition or undertaking for which he requires suit to be brought.

2. Virginia Code Ann. § 49–26. Effect of failure of creditor to sue.—If such creditor, or his

committee or personal representative, shall not, within 15 days after such requirement, institute suit against every party to such contract who is resident in this State and not insolvent and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety, guarantor or endorser or his estate, and of his cosureties in their estates, the money due by any such contract for the payment of money, or the damages sustained by any breach of the collateral condition or undertaking specified as aforesaid; but the conditions, rights and remedies against the principal debtor shall remain unimpaired thereby.

Since the statute is designed to protect the surety's equity against the principal, a demand on the creditor requires him to sue only the solvent, resident principals on the contract and not other sureties. Although the question has never been decided in Virginia, the Supreme Court of West Virginia has decided the issue. In *State v. Citizens' National Bank of Philippi*, 114 W.Va. 338, 171 S.E. 810 (1933) the West Virginia court considered whether their statute, which was patterned on the Virginia statute, required a creditor to sue all sureties or only the principal. The court after reviewing Virginia law held that the statute:

. . . is limited to the protection of the sureties against any infringements of rights which the creditor or the sureties may have against the principal debtor; or, in other words, the statute was not designed to give protection to a surety against another surety. *State, supra* at 812.

The defendant relies on cases in Arkansas and Iowa which reach the opposite conclusion. The Iowa case, *Moore v. Peterson*, 64 Iowa 423, 20 N.W. 744, was decided in 1844, long before the decision of the West Virginia court. In *W. T. Rawleigh Co. v. Moore et al.*, 196 Ark. 1148, 121 S.W.2d 106 (Arkansas 1938) the court ruled that the notice must require suit against the sureties as well as the principal. The Iowa statute, however, used the term "principal debtor and other party liable" to describe who must be sued. This case is of little precedential value since the language in the statute clearly requires suit against parties other than the principal while the Virginia statute is ambiguous on this point.

This court holds that the statute does not require suit against the endorsers on the two notes. Judgment, therefore, should be granted for the plaintiff. The court further finds that reasonable attorney's fees in the amount of $15,000 should be awarded.