## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Dominion Bank, N.A.

v.

Dominion Group I
Limited Partnership et al.

April 29, 1992

Case No. CL92–45

By Judge William H. Ledbetter, Jr.

This is an action on a promissory note, instituted by the Bank against the maker (the Partnership) and all guarantors.

John H. Toole and Lamar S. Toole have filed a demurrer. They say that the Bank cannot proceed against them as guarantors of the note until the Bank has obtained judgment against the maker and executed on that judgment. They cite Virginia Code §§ 49–25 and 49–26 as authority for their position.

Arguments on the demurrer were heard on April 22, 1992, and taken under advisement. This opinion letter addresses that matter.

*Facts*

Adhering to recognized principles, the court accepts as true the facts alleged in the motion for judgment, and all reasonable inferences to be drawn from those allegations, in considering the demurrer. *West Alexandria Properties, Inc. v. First Virginia Mortgage*, 221 Va. 134 (1980).

According to the motion for judgment, the Partnership executed a promissory note dated March 20, 1990, payable to the Bank upon terms set out in the instrument. A copy of the note is attached to the pleading. It indicates that the note was made by the Partnership, signed by Thomas B. Booth, partner, and further, that the other defendants signed the instrument under the words "Payment Guaranteed." The Tooles also executed an "unconditional Continuing

Guaranty" in favor of the Bank on April 21, 1988. A copy of that instrument is attached to the plaintiff's pleading. By its terms, the Tooles guaranteed payment of all debts of the Partnership existing or thereafter created.

After default, the Bank notified the maker and all guarantors that it was declaring all obligations under the note due and payable. Later, the Bank foreclosed on collateral. Then on March 4, 1992, the Bank filed this action against the maker and guarantors for the deficiency.

## *Decision*

"Payment Guaranteed" or equivalent words added to a signature on a note mean that the signer engages that if the instrument is not paid when due, he will pay it according to its terms without resort by the holder to any other party. When words of guaranty are used, presentment, notice of dishonor, and protest are not necessary to charge the guarantor. Virginia Code § 8.3–416.

Virginia Code § 49–25 provides that a guarantor on any contract may, if a right of action has accrued, require the creditor, by notice, "to institute suit thereon." Virginia Code § 45–26 provides that if the creditor does not proceed within thirty days to "institute suit against every party to such contract who is a resident of the State and not insolvent and prosecute the same with due diligence to judgment and execution, he shall forfeit his right to demand of such . . . guarantor . . . the money due . . . or the damages sustained."

The Tooles contend that they gave notice to the Bank, as contemplated by the statutes on February 28, 1992. A copy of a letter from Mr. Toole to the Bank is attached to the demurrer. The court will assume for purpose of this decision that the letter was received by the Bank and constitutes notice for both Tooles. The Bank filed this suit on March 4, 1992, within the thirty-day statutory period. Nevertheless, the Tooles argue that the statutes require the Bank *first* to file suit and pursue its remedies against the principal obligor, the Partnership.

The Tooles' argument is without merit.

First, the 1988 guaranty executed by the Tooles is an unconditional guaranty of payment, in which the Tooles expressly waive their rights under § 49–25 and § 49–26 and agree that the Bank can proceed against them, upon default, without resorting to any other security or collateral. In addition, their signatures on the note, under

the words "payment guaranteed," have the effect spelled out in § 8.3–416.

Second, the statutes relied upon do not require a creditor to sue the principal obligor, obtain a judgment, and execute on the judgment, *before* it can initiate action against the guarantors. Nor is such a proposition implied. Rather, the creditor must, if given notice under § 49–25, "institute suit against every party to such contract [with some exceptions not relevant here] . . . and prosecute the same with due diligence to judgment and by execution." The Bank has done that. The fact that it has joined the Tooles and the other guarantors as co-defendants in its suit against the maker is not in violation of the statutes.

Originally enacted in the eighteenth century, the statutes are designed to aid a surety (or guarantor) in motivating a creditor to take action against the principal debtor rather than delay or forebear to the detriment of the surety. Prior to the enactment of the legislation, the surety could file a bill in equity to compel the principal debtor to pay the debt if the surety was apprehensive of loss by indulgence of the creditor. These statutes create no new rights in favor of the surety; rather, they provide the surety a more summary remedy. *See, Harrison v. Price*, 66 Va. (25 Gratt.) 553 (1874). Interpreting a similar law, the West Virginia Supreme Court, referring to an earlier Virginia case, observed that "the mischief which the statute was intended to remedy was that a creditor having his debt secure and being careless whether he made it out of the real debtor or the surety, would often delay to sue till the debtor became insolvent, and the whole burden was thrown on the surety . . . . The remedy which the statute gives instead of [the old bill in equity to compel the principal debtor to pay the debt] is a written requisition to the creditor to sue; and if after receiving this, he chooses to give indulgence, it is at his own risk." *State v. Citizens National Bank*, 171 S.E. 810 (W. Va. 1933); *also see, Wright v. Stockton*, 32 Va. (5 Leigh) 153 (1834). For a succinct discussion of a surety's remedies, including the statutory remedy "for the procurement by the surety of an action against his principal" by way of notice to the creditor that he bring suit and proceed with diligence against the principal debtor, see *Humphrey v. Hitt*, 47 Va. (6 Gratt.) 509 (1850).

The thrust of these statutes was further explained in *Wright v. Stockton, supra*:

> The statute makes it the business of the sureties to keep a watch upon their principal: the creditor is not obligated to move till he receives notice; and if then he promptly puts the bond in suit, gets his judgment, and issues his execution in the usual course, the sureties remain just as liable as if no notice had been given. It is not the notice, then, which discharges the sureties; but . . . unless the creditor so required to sue shall in a reasonable time commence an action on the bond, etc., he shall forfeit his right to recover of the sureties. This, therefore, is the operating principle in the discharge of sureties; this unreasonable delay, this culpable indulgence given to the debtor after notice to sue, is the act that forfeits the creditor's right to recover of the sureties; in other words, releases them from the debt.

The mischief which the statutes are designed to remedy does not include an action by the creditor against all parties to the instrument, including guarantors, in one suit. In no reported case has a court held that a creditor is precluded by §§ 49–25 and 49–26 from suing all obligors jointly after the creditor receives notice to sue. In fact, in *Manson v. Rawlings*, 112 Va. 384 (1911), the creditor obtained a joint judgment against the principal debtor and the surety.

Here, the Bank did not "give indulgence" after it received notice from the Tooles. Within the statutory thirty-day period, it instituted suit against the maker of the note. Joinder of the guarantors in the same action is not prohibited by the letter or spirit of the statutes and is consistent with the scheme of Article 3 of the Uniform Commercial Code.

Accordingly, the demurrer will be overruled.

The Tooles also filed a motion for a protective order against discovery. At the hearing on the demurrer, the court stayed the plaintiff's discovery against the Tooles until the court ruled on the demurrer. In light of this decision on the demurrer, the stay will be lifted and the Tooles will be given twenty-one days from the date of the order memorializing this decision to respond to the Bank's request for admissions, interrogatories, and request for production of documents.