# CHARLESTON

CASTO *v.* BAKER.

Submitted March 13, 1906.    Decided April 24, 1906.

1.   DEED—*Construction—Intent of Parties—Evidence.*

In construing a deed in which there is a latent ambiguity as to a boundary line, occasioned by disagreement between monuments and marked lines, on the one hand, and magnetic courses, on the other, therein specified, as matter of description, the intention of the parties, which is the controlling factor in the problem, is to be ascertained from the facts and circumstances attending the execution of the deeds, and the situation and conduct of the parties, and, as a rule of law, they are presumed to have been influenced and controlled by facts of which they had knowledge rather than by things of which they knew not.   (p. 687.)

2.   APPEAL—*Review—Verdict.*

A verdict, clearly inconsistent with all the controlling facts in the case, none of which are in any way controverted, will be set aside, as being contrary to the law and the evidence.   (p. 687.)

Error to Circuit Court, Mason County.

Action by Maria E. Casto and others against C. J. and G. W. Baker. Judgment for plaintiffs, and defendants bring error.

*Reversed. Remanded.*

W. R. GUNN and B. H. BLAGG, for plaintiffs in error.

JOHN E. BELLER and JOHN W. ENGLISH, for defendants in error.

POFFENBARGER; JUDGE:

On a writ of error to a judgment of the circuit court of Mason county, in an action of ejectment, C. J. Baker and Geo. W. Baker make only one assignment of error, namely, the refusal of the court to grant them a new trial, on the ground that the verdict in favor of the plaintiff, Maria E. Casto, is contrary to the law and the evidence.

Strange as it may seem, there is no conflict whatever in the evidence. The testimony of all the witnesses is in perfect harmony and agreement, and the only question submitted to the jury was that of the intent of the grantor in the execution of three deeds. In the year 1878, Charles Baker, having four sons and a daughter, namely, W. H., J. M., C. J. and Geo. W. Baker, and Maria E. Casto, and owning a considerable quantity of land, divided it among his children, by executing deeds to them for the portions which he desired them to have. Accordingly, A. W. Rollins, a surveyor, came, at his request, and divided the land into parts, by survey, as directed by Charles Baker, and then prepared the deeds, which were immediately executed by Charles Baker and his wife. The lots so laid off for C. J. Baker, Geo. W. Baker and Maria E. Casto, respectively, were coterminous, and a corner, common to the lots surveyed for C. J. and Geo. W. Baker, was in the eastern line of the lot surveyed for Maria E. Casto, the general course of which, though broken, is practically north and south. Where the grantor fixed that line, by the deeds to said three children, is the bone of contention.

As the calls of that line follow the first call in the description of the tract conveyed to Maria E. Casto, as found in her deed, it is necessary, in the interest of clearness, to quote here the description of the first line as well as that of the one

in controversy. They read as follows: "beginning at a stone pile in the run bottom, and thence down the run N. 86 E. about 6 poles, to a poplar near branch, thence N. 3, 43 poles to small white oak corner to G. W. Baker, thence N. 5 E. 17 poles to a dogwood, thence N. 12 E. 6 poles to a small dogwood, thence N. 42 E. 17 poles to a black oak on the brink of the hill." The descriptions in the deeds to C. J. and Geo. W. Baker, so far as they relate to this line and the oak corner, are substantially in accord with the calls just quoted. Geo. W. Baker's deed calls for a large white oak as the corner instead of a small one, but calls for a small one also (on the Maria E. Casto line) four poles from the corner. C. J. Baker's deed makes the call " N. 5 E. 17 poles" read "N. 5 E. 13 poles" and the call "N. 12 E. 6 poles" read "N. 12 E. 6 poles 11 links." These discrepancies are very slight. The location of every monument called for on the line, as described by the deed, · is known and uncontroverted, and, if the line be established according to them, the case is for the defendants. But, in attempting to apply the description as a whole, the courses called for do not correspond with those found in running the lines according to the monuments. If the monuments be ignored and the line established by the calls for courses and distances, the case is for the plaintiff. Only part of the line as described in the deed by monuments was actually surveyed and marked. None of the line, claimed by the plaintiff, was actually surveyed. This circumstance is accounted for by the witnesses in the following manner : The line, as actually run, began at the stone pile and ran straight to the G. W. Baker oak corner, and thence, following the calls given in the deed, to the black oak corner, on the brink of the hill. After all the surveying had been done, and before the deeds had been written, Charles Baker asked the surveyor if he could not, without a re-survey, drop down from the stone pile to the poplar, so as to give his daughter more of the top of the hill, between the poplar and the oak, for a building site. He replied that he could, and thereupon wrote the deeds, according to direction. If the calls for monuments are controlling, he changed the line only from the south end of it to the oak corner, and thereby gave her an additional triangle, bounded by lines drawn from the stone pile to the poplar, thence to the oak and thence back to

the stone pile; but, if the calls for courses and distances are to prevail, he moved the whole line to the east about six poles, and thereby gave her an additional irregular parallelogram. Taking the latter view, the jury found for the plaintiff.

The question thus determined by the jury was one of intention, involved in the construction of the deed, a matter of law and fact combined, not one of pure fact. A latent ambiguity in the deed, discovered in the effort to apply it to its subject matter, the land, and not apparent on its face, made it necessary to consider all the circumstances attending the execution of the deed, the situation of the parties and their conduct in the transaction of the business. The object of the departure from the survey, in the execution of the deeds, was to give Mrs. Casto more land near the south end of her eastern line. The problem submitted to the surveyor was, whether he could accomplish that result, without further surveying. To aid him, it was suggested that he make the poplar the south terminus, instead of the stone. All knew where it was. Then his field notes disclosed the oak corner tree on the line surveyed. To that, he could determine the distance by calculation, or insert the distance between it and the stone pile, for it was approximately the same pile. The course of this new line from the poplar to the oak would differ from that of the old line, and the making of that change was probably the most difficult matter in the transaction. For some reason, he failed to make it. If he had made it, all the other courses would have agreed with the line, as indicated by the monuments. He did not know, and could not have known, what object would be the C. J. and Geo. W. Baker corner on the line, in lieu of the oak tree, nor at the northern terminus, instead of the black oak he had marked, if he moved the entire line over. He never went to these points to ascertain what the monuments would be, or to establish any. In point of fact, there was no white oak where the corner would have been and no tree at the end of the line. To have moved the whole line over, without further surveying, it would have been necessary to leave out calls for monuments, or put in calls for imaginary ones. He did neither, but put in those he had marked on the line surveyed. The description of the line, as he wrote it, and the parties all accepted it, under

these circumstances, the grantor to execute the deeds, and the grantees to hold them as muniments of title, call for just such trees at these points as he had marked. They all knew what trees they were and where they stood. None of them, except the surveyor, knew anything about the courses, and he, by inadvertence, failed to discover the discrepancy. He himself could not have discovered it by looking at the deed alone. If it be supposed that he left the courses unchanged, by design, intending to shift the entire line east, it would not follow that the parties knew anything about it, for the reading of the deed would not have disclosed it. It is their intention, not his, that must control, and for which the jury were under a duty to inquire. In seeking their intention, it must be assumed that they were controlled by what they knew, rather than by things of which they had no knowledge, and it is highly improbable that they knew the line, if run according to the courses, would go about six rods east of all the monuments called for except the first one. All three of the deeds called for the white oak corner and two of them for the black oak corner, both of which natural objects were well known to all the parties. Moreover, the motive by which all parties were actuated in effecting this change of the plan of division, was to give Mrs. Casto more land at the south end of the line in question. Nothing was said about increasing the area of her lot at the northern end of it. This is a very potent circumstance. The motive in any series of acts is all-pervading in its silent domination of the actors.

This analysis of the parol evidence illustrates the wisdom and justice of the well settled rule, that marked lines and natural monuments control courses and distances. Its most frequent application is found in cases in which the subject matter of the inquiry is the identification of a boundary line, but the element of intention enters more or less into every such case. Here, it is unusually prominent, for the reason that all the facts and circumstances, relating to the preparation, execution and delivery of the deeds are shown. Ordinarily, they do not so fully appear. The difference between this case and those in which the rule is generally applied, is one of degree, not of principle. The jury, in arriving at their verdict, wholly ignored this rule. They also returned a verdict clearly inconsistent with the overwhelming weight of practi-

cally all the facts disclosed by the evidence, none of which were in dispute. This, of itself, entitled the defendants to a new trial. *Chapman* v. *Liverpool Salt Co.*, 57 W. Va. 395; *Davidson* v. *Railway Co.*, 41 W. Va. 407; *Johnson* v. *Burns*, 39 W. Va. 658.

For the reasons stated, the judgment will be reversed, the verdict set aside, a new trial allowed and the case remanded.

*Reversed. Remanded.*