399 S.E.2d 871

**Mary Frances HENRY**

v.

**WILSON FORD, INC.**

No. 19422.

Supreme Court of Appeals of West Virginia.

Nov. 29, 1990.

---

Alfred J. Lemley, Furbee, Amos, Webb & Critchfield, Fairmont, for Wilson Ford, Inc.

Gregory T. Hinton, Fairmont, for Mary Frances Henry.

PER CURIAM:

This is an appeal by Wilson Ford, Inc., from an order of the Circuit Court of Marion County upholding a jury verdict in favor of Mary Frances Henry, the plaintiff in a conversion action, in the amount of $3,821.42. On appeal, the appellant claims that there was no evidence of conversion and that the jury's verdict should not stand. After reviewing the record, this Court agrees and reverses the decision of the circuit court.

On June 3, 1986, Mary Frances Henry visited Wilson Ford, Inc., in Fairmont, West Virginia, and spoke to a salesman about purchasing a new 1986 Ford Tempo automobile. In the course of the discussion, Ms. Henry's 1984 Mercury Topaz was appraised by one of Wilson Ford's representatives. At the conclusion of the discussion, a purchase price for the new automobile was quoted to Ms. Henry which took into account the trade-in value of her 1984 Mercury Topaz. The quote was made without reference to any lien on the title to Ms. Henry's Mercury Topaz. At the conclusion of the discussion, Ms. Henry executed an application statement to the Ford Motor Credit Company to finance the new car.

After Ms. Henry left Wilson Ford, Inc., it was determined that there was a lien against her 1984 Mercury Topaz. As a result of this lien, the financing arrangements had to be altered. On June 4, 1986, Ms. Henry returned to Wilson Ford, Inc., and rearranged the terms of the purchase. Under the rearranged agreement, Ms. Henry agreed that the lien on the 1984 Mercury Topaz was to be paid off so that title to it could be cleared and the Mercury could be used as a trade-in. In conjunction with the new arrangement, Ms. Henry executed a number of documents, including a West Virginia Retail Installment Contract for the purchase of the 1986 Ford and an "Authorization for Pay-off and Title Release and Power of Attorney." Under the latter document, Ms. Henry constituted and appointed Wilson Ford, Inc., her true and lawful attorney to sign any and all papers necessary to transfer the certificate of title to her 1984 Mercury Topaz.

In her brief Ms. Henry claims that while she was discussing the purchase-trade-in with Wilson Ford's salesman either on June 3 or June 4, she asked him where her 1984 Mercury Topaz was. She indicates that he said, in words or effect, that the "car was gone."

At the conclusion of the arrangements, on June 4, 1986, Ms. Henry took possession of her new 1986 Ford Tempo and took it home, leaving the 1984 Mercury Topaz with

Wilson Ford, Inc. Wilson Ford, Inc., subsequently paid the lien against the 1984 Mercury Topaz and disposed of it.

A number of months later, Ms. Henry began experiencing financial problems, and Wilson Ford, Inc., assisted her in changing the payment date on her monthly installments to Ford Motor Credit Company. However, she continued to experience financial problems, and in May, 1987, Ford Motor Credit Company repossessed the 1986 Ford Tempo.

After the repossession of the 1986 automobile, Ms. Henry instituted a civil action against the appellant, Wilson Ford, Inc. In her complaint, she alleged that after her discussions with Wilson Ford's agent on June 3, 1986, she was allowed to test drive the 1986 Ford Tempo and it was understood that she would return on June 4, 1986, to indicate whether she wanted to purchase the 1986 automobile. She further alleged that when she returned on June 4, 1986, she had decided not to purchase a new car because she did not like the 1986 Ford Tempo. She claimed, however, that when she returned on June 4, she was informed that the defendant had sold her 1984 Mercury. She stated that she did not authorize the sale of the 1984 Mercury and that she was informed and believed that the 1984 Mercury had been sold before she had completed the test drive of the 1986 Ford Tempo. She further alleged that since her 1984 automobile had been sold, she unwillingly, and under duress, entered into the agreement whereby she agreed to purchase the 1986 Ford Tempo. She concluded with the allegation that the actions of Wilson Ford, Inc., constituted wrongful conversion of her 1984 Mercury Topaz.

A trial was conducted in the case on May 26, 1988. In the course of the trial, Mrs. Henry was questioned about her arrangement with Wilson Ford regarding her 1984 Mercury Topaz. She specifically acknowledged that she had executed the power of attorney authorizing the transfer of title to the Mercury Topaz. She also indicated, contrary to the implications of her complaint, that her car was present at the time she authorized Wilson Ford to sell it. The testimony proceeded as follows:

Q. Okay. When you first took your car in, the 1984 Topaz, and you drive into Wilson's Ford and you talked with Herb Fetty—

A. Right in front of that door in the back.

Q. Okay. On that day, did you give them permission to sell your car?

A. No, I did not; absolutely not.

Q. And when you returned to ask for your car, did they tell you your car had been sold?

A. He didn't say it was sold or anything. He said, "It's gone."

Q. It's gone?

A. That's right. That's what Herb said.

Q. Okay. Were you wanting you [sic] car at that time when he told you your car was gone?

A. Beg your pardon?

Q. Were you wanting your car at the time when he said your car was gone?

A. Yes, because it was my car. I drove up there in it and I wanted to go home.

Q. Did you give him permission?

A. No, I did not.

Q. Authorize him to try to sell your car?

A. No, I did not. I wasn't selling that car I had.

Q. Now, your car is gone and you did sign some papers to buy another car.

A. Well, I didn't know—I forget what him and her told me. That there's something that anyhow, I signed these papers while we were talking and I was listening to them and trying to write too, because I thought well, you know, what the heck.

Q. Now, this is—

A. But I didn't realize what was going to happen.

Q. Okay. Now, these papers you're talking about they wanted you to

sign, this is after Herb had told you your car was gone?

A. No, before. My car was still there.

Q. Your car was still there?

A. Yes, it was.

Q. Okay.

A. I could look right out of Herb's office and her office and see my car setting there.

Q. And how soon after that was your car gone?

A. Well, it was gone that day.

Ms. Henry also acknowledged that she received a 1986 Ford Tempo on that day and that she used it for almost a year. When asked why she didn't return it, she testified:

Well, they didn't come and get it. I had to take it home because that was the only way I could get home. So, I thought whenever I drove it out of there, I would just leave it and let them come and get it and that's what I did. They messed me all up on that so, I just let it go.

She also made payments on the new car and did not object about the taking of her 1984 Mercury Topaz for a considerable period.

At the conclusion of the trial, the jury rendered a verdict in favor of Ms. Henry in the amount of $3,821.42.

After entry of the judgment, Wilson Ford moved to set aside the jury's verdict and moved for the court to enter judgment in its behalf.

By order dated July 5, 1989, the trial court denied the appellant's post-trial motions. In the court's letter of opinion dated July 7, 1988, the trial court stated:

The Court, after reviewing the defendant's motion, is of the personal opinion that the verdict was the result of sympathy. However, the Court feels that it can never substitute its opinion for that of the jury.

On appeal, Wilson Ford claims that the evidence relating to the conversion is not conflicting and that only one inference may be drawn from it by reasonable minds.

Essentially, Wilson Ford argues that the evidence shows that Ms. Henry consented to the transfer of her automobile in writing and that where the owner of personal property consents to the transfer of possession of that property, there is no conversion. It claims that, under the circumstances, the trial court erred in denying its post-trial motions and in allowing the judgment in behalf of Ms. Henry to stand.

■ In conjunction with the setting aside of verdict, this Court has ruled that:

A verdict of a jury without evidence to support it, or against the clear weight and preponderance of conflicting evidence, will be set aside by this Court.

Syllabus, *Speicher v. State Farm Mutual Automobile Insurance Co.*, 151 W.Va. 292, 151 S.E.2d 684 (1966). *See also Koger v. Mutual of Omaha Insurance Co.*, 152 W.Va. 274, 163 S.E.2d 672 (1968); *Lester v. Flanagan*, 145 W.Va. 166, 113 S.E.2d 87 (1960); *Casto v. Baker*, 59 W.Va. 683, 53 S.E. 600 (1906).

■ A fair reading in the case presently before the Court, and particularly the testimony of Ms. Henry, demonstrates that up until the time Ms. Henry signed papers in Wilson Ford's office, Wilson Ford, Inc., was in possession of her 1984 Mercury Topaz automobile. Ms. Henry had left the Topaz with Wilson Ford, Inc., when she took the 1986 Tempo for a test drive. According to Ms. Henry's own testimony, at the time she signed the papers her car was still on the lot and she "could look right out of Herb's office ... and see my car setting there." It disappeared from Wilson Ford's possession only after Ms. Henry had signed the papers, including a power of attorney which appointed Wilson Ford, Inc., her true and lawful attorney to sign any and all papers necessary to transfer the certificate of title to the 1984 Mercury Topaz automobile.

A fair reading of the evidence shows that the transactions which occurred were preliminary to Ms. Henry's obtaining a new automobile from Wilson Ford. Such a reading also suggests that Ms. Henry, at the time of the transfer of her Mercury

Topaz, did not protest what occurred. To the contrary, she took her new automobile from Wilson Ford, Inc., and drove off.

It has been generally recognized that where one assents to, or ratifies, another's taking of his personal property, conversion does not occur. The principle is summarized in 89 C.J.S. *Trover and Conversion* § 5 (1955), as follows:

> Except where it is obtained by duress, or from one lacking capacity to consent, or is obtained, or acted on, fraudulently, if the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover for conversion thereof....

*See also Maples v. United Savings & Loan Association,* 686 S.W.2d 525 (Mo.App. 1985); *Seay v. Vialpando,* 567 P.2d 285 (Wyo.1977).

This Court believes that the only fair reading of the evidence in the present case indicates that at the time Ms. Henry signed the papers in the Wilson Ford's office she was interested in and arranging the purchase of a new automobile. It is unreasonable to conclude that, as a part of the purchase, she did not understand that she would have to surrender her 1984 Mercury Topaz as a trade-in. By signing the papers, she consented to that surrender and authorized Wilson Ford to dispose of the 1984 Mercury Topaz. The Court also believes that Ms. Henry's taking possession of the new automobile, her making payments on it, and her failure to object to the transaction until many months later when she got into financial trouble, rebuts her argument that she acted under duress and contrary to her will in surrendering the 1984 Mercury Topaz.

In this Court's view, the evidence adduced is insufficient to support the jury's verdict and, under the rule set forth in the syllabus of *Speicher v. State Farm Mutual Automobile Insurance Co., supra,* that verdict must be reversed and set aside.

The judgment of the Circuit Court of Marion County is, therefore, reversed, and this case is remanded with directions that the court enter judgment for the appellant, Wilson Ford, Inc.

Reversed and remanded with directions.